AO 241
(Rev. 01/15)

**FILED**

DEC 0 2 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Eastern District of California |
|---|---|

| Name (under which you were convicted): David Cramer | Docket or Case No.: 62-129468 |
|---|---|

| Place of Confinement : Placer county | Prisoner No.: Constructive custody |
|---|---|

| Petitioner (include the name under which you were convicted) David Cramer | v. | Respondent (authorized person having custody of petitioner) People of the State of California |
|---|---|---|

| The Attorney General of the State of: California |
|---|

2: 1 5 - CV - 2 5 0 6      CKD HC

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

Superior Court State of California County of Placer

(b) Criminal docket or case number (if you know): 62-129468

2.  (a) Date of the judgment of conviction (if you know): 11/14/14

(b) Date of sentencing: 11/20/14

3.  Length of sentence: 30 days

4.  In this case, were you convicted on more than one count or of more than one crime?  ☐ Yes   ☑ No

5.  Identify all crimes of which you were convicted and sentenced in this case: California Penal Code 242

6.  (a) What was your plea? (Check one)

☑ (1)   Not guilty          ☐ (3)   Nolo contendere (no contest)

☐ (2)   Guilty               ☐ (4)   Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury   ☐ Judge only

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☑ Yes   ☐ No

8.  Did you appeal from the judgment of conviction?

☑ Yes   ☐ No

9.  If you did appeal, answer the following:

(a) Name of court:   Superior Court California County of Placer Appellate Division

(b) Docket or case number (if you know):   62-129468

(c) Result:   Conviction affirmed

(d) Date of result (if you know):   7/22/15

(e) Citation to the case (if you know):

(f) Grounds raised:   Failure to give jury instruction Calcrm 3476

Court erred when it admitted altered evidence.

Court erred when it excluded The Civil Restraning Order SCV0034311

Court erred when it excluded Julie Beland's medical records.

(g) Did you seek further review by a higher state court?   ☑ Yes   ☐ No

If yes, answer the following:

(1) Name of court:   California Court of Appeal Third Appellate District

(2) Docket or case number (if you know):   C080125

(3) Result:   The petion for transfer is denied

(4) Date of result (if you know):   9/17/15

AO 241
(Rev. 01/15)

Page 4

(5) Citation to the case (if you know): _____

(6) Grounds raised: Ineffective assist of counsel.Failure to give jury instruction Calcrm 347

Court erred when it admitted altered evidence.  False arrest.  Sixth amendment violations.

Court erred when it excluded The Civil Restraning Order SCV0034311.  Suppession of Evid

Court erred when it excluded Julie Beland's medical records.  Miranda Violation.

(h) Did you file a petition for certiorari in the United States Supreme Court?     ☐ Yes     ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.  Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?     ☑ Yes     ☐ No

11.  If your answer to Question 10 was "Yes," give the following information:

(a)     (1) Name of court: Superior Court California Placer County

(2) Docket or case number (if you know): WHC-1418

(3) Date of filing (if you know): 9/28/15

(4) Nature of the proceeding: Writ of habeas corpus

(5) Grounds raised: Ineffective assistance of counsel

False Arrest/ False Imprisonment

Failure to give jury instruction Calcrim 3471

Court erred when it admitted altered evidence.

Court erred when it excluded The Civil Restraning Order SCV0034311

Court erred when it excluded Julie Beland's medical records.

Court violated Petitioner's Sixth Amendment right to confront witnesses

Prosecution suppressed exculpable evidence and allowed false testimony

Court violated Petitioner's miranda rights.

Police violated Petitioner's right to counsel for questioning

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☑ No

(7) Result: Petition for writ of habeas corpus was denied

(8) Date of result (if you know): 10/26/15

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: California Court of Appeal third Appellate District

(2) Docket or case number (if you know): C0080618

(3) Date of filing (if you know): 11/9/15

(4) Nature of the proceeding: Petition for writ of habeas corpus

(5) Grounds raised: Ineffective assistance of counsel

False Arrest/ False Imprisonment

Failure to give jury instruction Calcrim 3471

Court erred when it admitted altered evidence.

Court erred when it excluded The Civil Restraning Order SCV0034311

Court erred when it excluded Julie Beland's medical records.

Court violated Petitioner's Sixth Amendment right to confront witnesses

Prosecution suppressed exculpable evidence and allowed false testimony

Court violated Petitioner's miranda rights. Police violated Petitioner's right to counsel for ques.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result: The petition for writ of habeas corpus was denied

(8) Date of result (if you know): 11/20/15

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: California Supreme Court

(2) Docket or case number (if you know):

(3) Date of filing (if you know): 12/1/15

(4) Nature of the proceeding: Writ of habeas corpus

(5) Grounds raised: Ineffective assistance of counsel

False Arrest/ False Imprisonment

Failure to give jury instruction Calcrim 3471

Court erred when it admitted altered evidence.

Court erred when it excluded The Civil Restraning Order SCV0034311

Court erred when it excluded Julie Beland's medical records.

Court violated Petitioner's Sixth Amendment right to confront witnesses

Prosecution suppressed exculpable evidence and allowed false testimony

Court violated Petitioner's miranda rights. Police violated Petitioner's right to counsel for

questioning.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result: Submitted to satify state remedies.

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:   ☑ Yes   ☐ No

(2) Second petition:   ☑ Yes   ☐ No

(3) Third petition:   ☑ Yes   ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** Ineffective assistance of counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See attachment question 12 a Ground one

(b) If you did not exhaust your state remedies on Ground One, explain why:

1/23/14, Thursday prior to 10:00 am Julie Beland injured her head. (within the scalp) Beland has access to prescription medication. Beland testified things just weren't making sense. (RT 198 line 19) Beland lied to police this scalp injury was a result of the dog park incident. Beland's prescription medication were suppressed. (Exhibit 19 page 2)

10:00 am Ashley Dog Park. Petitioner David Cramer enters the dog park. Michael Bailey's large german shepherd and Beland's female belgian shepherd immediately engage Cramer's young english shepherd. The larger dog' bite Cramer's dog on the head, neck. back, and flank. Bailey's dog took Cramer's dog by the neck 4-5 times. (RT254-259) Cramer is twice on the ground over his dog protecting it from the larger dogs. Beland failed to recall her dog. Beland's dog took Cramer's dog by the neck. Cramer's dog had three puncture wounds to the neck. (photos) Cramer slapped Beland's dog on the butt to get it to release his dog. Beland and Bailey both advanced toward Cramer. Beland advanced rapidly with an arm in the air screaming obscenities. Bailey's testimony proves Cramer did not advance toward Beland. Cramer was "rooted on the spot". (RT 159 line 19) Robert Corbett stated Beland ran toward Cramer.

If Beland and Bailey understood and followed the rules of the dog park the

confrontation would not have happened.

Cramer saw two loose aggressive dogs, a very aggressive woman and a man advancing toward him.   When Beland arrived, Cramer reacted and slapped at Beland's sunglasses.  Scanel's testimony proves Bailey lied about where he was at the start of the incident.  (RT178 line 19)

Beland lied to police: (Police report page 13 line 7 and 24 line 19)

1  That it was normal play between the dogs.

2  That Cramer advance toward her.

3  That Cramer used two hands and hit her over the head.

4 That Cramer caused the injury to her scalp and

5  That she sustained a concussion.

Jaime Scanel's testimony proves that Beland, Bailey and Corbett lied to police that Cramer tried to leave the park right after the strike to Beland and that the 911 call was placed immediately after the incident. ( RT 183 line 18)

The case before the trial court was whether the strike was self defense or assault.  The impeachment of Julie Beland was imperative.

Cramer was self represent at trial and lost. He appealed and Lauren Otto was court appointed counsel.  The mistakes Otto made were basic

principles of law.   Cramer would have won the appeal but for

the errors of counsel.  Otto's first error was failure to recognize

that the arrest was unlawful. Officer James Dalton arrested Cramer two

days after the incident without an arrest warrant.

Dalton and the Auburn Police Department excluded any evidence form the

police report that fractured Dalton's probable cause.

1  Dalton lied on his report that he questioned the accusing witnesses

separately.  (198 line 7 - line 14)

2  Dalton failed to mention Beland and her husband returned to the park

within an hour after the incident to issue threats to get even.

3  Dalton failed to include Cramer's statement that Beland returned to the

park after the incident on his report.

4  Auburn PD fail to enter reports by Judy Emmert and Linda Cassel on the

police report that Beland had returned to the park.  (RT 248 LINE 10)


**The first argument on appeal**:  The trial court failed to give jury instruction

Calcrim 3476 The Right to Defend Real or Personal Property.  Petitioner

was twice on his knee over his dog protecting it from the larger dogs. (RT

256 line 3, line 26)  Petitioner's dog had 3 puncture wounds to the neck.

(Photos)  The aggressive dogs were directly behind their owners.  (RT 257

12 a Supporting facts                    Page 3 of 5

line 19) Beland, Bailey and their dogs were a threat to both the petitioner and his dog.   The Petitioner requested the instruction. (RT 282)  Bench notes instructional duty:  The court must instruct on a defense when the defendant requests it and there is substantial evidence supporting the defense.

**The second argument on appeal**: The court erred when it admitted the police altered chuck it.  The police altered the evidence and broke it twice after the incident.  (Police Report 25)  The evidence analyzed was not the evidence originally received.  People v. Wallace, 44 Cal. 4th 1032.  The trial judge prevented Cramer from questioning the police on Cal. Penal Code 141 b.  ( 23 line 27- 24 line 4)

**The third argument on appeal**: The court erred by not admitting the civil restraining order on to the record.  Beland submitted an application for a civil restraining order because of the incident.  (SCV00343311)  Beland wrote that she was walking with a cane at the time of the incident (SCV00343311 page 15)  Beland testified she was not walking with a cane at the time of the strike.  (RT 193 line 13)  Beland wrote she received a concussion as a result of the incident.  (SCV 00343311 page 11)  The affidavit was signed under penalty of perjury.  The civil restraining order is a

12 a Supporting facts                     Page 4 of 5

stamped self authenticating court document.  The trial judge omitted it

**The fourth argument on appeal:**  The court erred when excluded

Beland's medical records from the record. Dr Goldman's diagnosis of Julie

Beland was superficial injury of the head.  (Medical record page 3)

Nowhere on the medical record or discharge instruction does it state

Beland suffered a concussion.  Petitioner struck Beland's glasses.  (RT 257

line 28, 258 line 1)  Beland entered the park with an injury to the head.

The trial judge use evidence code section 352 to exclude both the civil

restraining order and the medical records.  Evidence can be exclude only if

its probative value is "substantially outweighed" by the factors relied on by

the party seeking exclusion.

1 Cramer has the constitutional right to confront accusing witnesses.

   Pointer v. Texas 380 U.S. 400, 85 S Ct.1065, 13 L.ED. 2d 923

2  Impeachment of Beland was a main issue not collateral.

3  The civil restraining order is self authenticating.

Were it not for these oversights Cramer would have prevailed on appeal.

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐  Yes    ☑  No

(2) If you did not raise this issue in your direct appeal, explain why:    The appeal was controlled by court

appointed attorney Lauren Otto.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    Petition to transfer

Name and location of the court where the motion or petition was filed:    California Court of Appeal

Third Appellate District

Docket or case number (if you know):    C080125

Date of the court's decision:    9/17/15

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?                          ☐  Yes    ☑  No

(4) Did you appeal from the denial of your motion or petition?                      ☑  Yes    ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑  Yes    ☐  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:    California Superior Court Placer County

Docket or case number (if you know):    WHC-1418

Date of the court's decision:    10/26/15

Result (attach a copy of the court's opinion or order, if available):

Petition for writ of habeas orpus was denied

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:    Petition for writ of habeas corpus California Court of Appeal

Third Appellate District.  Denied 11/20/15

---

**GROUND TWO:**

The prosecution suppressed exculpable evidence and knowingly allowed false testimony.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See attached Ground 2

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ❒ Yes      ☑ No

(2) If you did *not* raise this issue in your direct appeal, explain why:  The appeal was controlled by court

appointed attorney Lauren Otto.

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☑ Yes    ❒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    Petition to transfer

Name and location of the court where the motion or petition was filed:  California Court of Appeal

Third Appellate District

Docket or case number (if you know):   C080125

Date of the court's decision:    9/17/15

Alleged victim, Julie Beland, sustained an injury to her head prior to going to the dog park 1/23/14.  Beland lied to police it was a result of the incident. Petitioner struck Beland's glasses.  Petitioner requested a Grand Jury investigation of the incident. Petitioner requested an Auburn Police Department investigation of the incident.  Petitioner received assurance from the Auburn Police Department that a thorough investigation would be conducted.  Judy Emmert testified she did speak with the police a second time about the incident.  (RT 248 line 14- 299 line 5)  Petitioner has first hand knowledge that the strike was not to Beland's scalp.  A competent detective should have been able to determine that Beland's two injuries were the result of separate incidents.  Beland's prescription drugs for 1/23/14 were redacted.  Petitioner did not receive Beland's statement to investigators.  The investigation was material and relevant to the petitioners case. The district attorney suppressed the Auburn Police Department's investigation of the incident.  Beland stated in court under oath the strike was to her head. (Scalp) (RT194 line 17)  The district attorney knows this to be false testimony.

Ground 2                                    1

Result (attach a copy of the court's opinion or order, if available):     Writ denied

_____

(3) Did you receive a hearing on your motion or petition?                          ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?                     ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: California Superior Court Placer County

_____

Docket or case number (if you know):   WHC-1418

Date of the court's decision:        10/26/15

Result (attach a copy of the court's opinion or order, if available):     The petition for writ of abeas corpus is

denied.

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two :  Petition for writ of habeas corpus California Court

of Appeal Third Appellate District.  Denied 11/20/15

_____

**GROUND THREE:**

Violation of Miranda rights

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Police never issued a Miranda waring to the petitioner.   Dalton requests an interview with petioner.

Dalton and Garlock conduct a custodial interview 1/25/14.  Petitioner is arrested at the termination of the interview.

(Police report 18)  Garlock appeared in court and testified against the petitioner.  (RT 114) Dalton appeared

in court and was the substantial witness to the petitioner's guilt. (RT 73 line 22)

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why:

<br>
<br>
<br>

(c)    **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐  Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: The appeal was controlled by court appointed attorney, Lauren Otto.

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    Petition to transfer

Name and location of the court where the motion or petition was filed: Court of Appeal Third Appellate District

Docket or case number (if you know):  62129468

Date of the court's decision:   9/17/15

Result (attach a copy of the court's opinion or order, if available):   The petition to transfer was denied

<br>

(3) Did you receive a hearing on your motion or petition?    ☐  Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   Superior Court California Placer County

Docket or case number (if you know):   WHC-1418

Date of the court's decision:    10/26/15

Result (attach a copy of the court's opinion or order, if available):    Denied writ.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: Writ of habeas corpus in California Court of Appeal C080618

_____

**GROUND FOUR:** Denial of legal counsel for questioning.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

1/24/14 Julie Beland gave police probable cause for felony battery. (Police report Page 13 and 24)

Dalton phones petitioner and requests he return to the park. (Police report page 18)

Petitioner meets Dalton at the park. Petitioner asks Dalton if he needs a lawyer. Dalton says no.

Petitioner is arrested at the termination of the interview. (Police report page 18)

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why:

_____

_____

_____

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ☐ Yes        ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: The appeal was controlled by court appointed attorney, Lauren Otto.

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes        ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:        Petition to transfer

AO 241
(Rev. 01/15)

Name and location of the court where the motion or petition was filed: California Court of Appeal

Third Appellate District

Docket or case number (if you know): C080125

Date of the court's decision: 9/17/15

Result (attach a copy of the court's opinion or order, if available): The petion for tranfer is denied.

(3) Did you receive a hearing on your motion or petition?          ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Superior Court California Placer County

Docket or case number (if you know): WHC-1418

Date of the court's decision: 10/26/15

Result (attach a copy of the court's opinion or order, if available): Petition denied

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: Writ of habeas corpus filed in California Court of Appeal case #C080618 denied 11/20/15.

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    ☑ Yes        ☐  No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

_____

_____

_____

(b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

_____

_____

_____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?        ☐  Yes      ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available.

_____

_____

_____

_____

_____

_____

_____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?        ☐  Yes      ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

_____

_____

_____

_____

_____

AO 241
(Rev. 01/15)

16.     Give the name and address, if you know, of each attorney who represented you in the following stages of the
        judgment you are challenging:

        (a) At preliminary hearing: Shani Roarke, Tatiana Filippova, Allison Cross.  Public Defenders Office

        (b) At arraignment and plea:

        (c) At trial:

        (d) At sentencing:

        (e) On appeal: Lauren Otto 1515 Lincoln Way Auburn Ca. 95603

        (f) In any post-conviction proceeding:

        (g) On appeal from any ruling against you in a post-conviction proceeding:

17.     Do you have any future sentence to serve after you complete the sentence for the judgment that you are
        challenging?          ☐   Yes      ☑   No

        (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

        (b) Give the date the other sentence was imposed:

        (c) Give the length of the other sentence:

        (d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the
        future?          ☐   Yes      ☑   No

18.     TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain
        why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*
        The limitation period shall run from the date on which the judgement became final by the conclusion
        of direct review.  The California Court of Appeal filed their denial 11/20/15.  The limitation period runs for
        year from this date and expires 11/20/16.

AO 241
(Rev. 01/15)

Page 15

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)   A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: Grant the writ of habeas corpus and ultimately

vacate the conviction.

___

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on    _N/A_    (month, date, year).

Executed (signed) on    _12-2-15_    (date).

See attached
Jurat
dated 12-2-2015

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

___

___

___

___

# CALIFORNIA JURAT CERTIFICATE

A notary or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of **CALIFORNIA**

County of **PLACER**

Subscribed and sworn to (or affirmed) before me on this

2nd day of December, 20 15, by

Day   Month   Year

(1) *David Cramer*

Name of Signer

proved to me on the basis of satisfactory evidence to be the person who appeared before me (.) (,) (and

(2)_____

Name of Signer

proved to me on the basis of satisfactory evidence to be the person who appeared before me.)

LORI S. JOHNSON
NOTARY PUBLIC · CALIFORNIA
COMMISSION # 2118313
PLACER COUNTY
My Comm. Exp. July 4, 2019

Place Notary Seal Above

*Lori S. Johnson*

Signature of Notary Public

──────── **OPTIONAL** ────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document*

**Description of Attached Document**

Title or Type of Document: *Petition for Relief from a conviction or Sentence.*

Document Date: *12-2-2015* Number of Pages: *23*

Signer(s) Other Than Named Above: _____

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                                         No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.                    **PROOF OF SERVICE**

_____/

    I, the undersigned, hereby certify that I'am over the age of eighteen

years and on _____ *12 - 2* _____, 20 *15*, I served a copy

of *Petition For writ of Habeas Corpus*,

by placing a copy in a postage paid envelope addressed to the person

hereinafter listed by depositing said envelope in the United States Mail:

Lance Martin                    *Lauren Otto*
601 University ave. Suite 150   *1515 Lincoln Art*
Sacramento, Ca. 95825          *Auburn Ca 95603*

I declare under the penalty of perjury that the foregoing is true and correct.

_____
                    David Cramer

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                                        No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/


EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS


Index

A

TABLE OF CONTENTS

A  PHOTOS OF PUNCTURE WOUNDS

   VETERINARIAN STATEMENT

B  GRAND JURY LETTER REQUEST FOR INVESTIGATION

   LETTER FROM AUBURN POLICE DEPARTMENT

   EMAIL TO CHIEF OF POLICE

   EMAIL FROM JOHN RUFFCORN

C  LAW STATUES AND CODE

D  COURT REPORTER'S TRANSCRIPT

E  AUBURN POLICE RPT DR14-023-02

F  ASHLEY MEMORIAL DOG PARK RULES

G  APPELLATE DEPARTMENT

      OPENING BRIEF

      REPLY BRIEF

      APPELLANT'S REPLY BRIEF

H  APPELLANT DIVISION OPINION

I  DENIAL FOR CERTIFICATION TO COURT OF APPEAL

J  PETITION FOR TRANSFER DENIED

K  WRIT OF HABEAS CORPUS SUPERIOR COURT

L  DENIAL OF WRIT OF HABEAS CORPUS SUPERIOR COURT

M  PETITION FOR WRIT OF HABEAS CORPUS COURT OF APPEAL

N  DENIAL OF WRIT OF HABEAS CORPUS COURT OF APPEAL

O  PETITION FOR REVIEW TO EXHAUST STATE REMEDIES



**Black Oak Animal Hospital**
3251 Marshall Road
Georgetown Ca, 95634
(530) 333-1544

Page 1 / 1

David W. Cramer
1860 Squires Canyon
Cool, CA 95614

Client ID: 7049

Invoice #: 181605

Date: 2/18/2014

| Patient ID: 7049-2 | Species: Canine | Weight: 64.00 pounds | |
|---|---|---|---|
| Patient Name: Pepper | Breed: Aust.Cattle Dog Mix | Birthday: 11/01/2012 | Sex: Spayed Female |

| | Description | Quantity | Total |
|---|---|---|---|
| 2/18/2014 | exam - routine | 1.00 | $28.00 |
| | Rabies (Canine) | 1.00 | $15.00 |
| | | Patient Subtotal: | $43.00 |

**Instructions**

IF FURTHER QUESTIONS ARISE, PLEASE DO NOT HESITATE TO CALL.

VACCINATIONS PROTECT PETS AS WELL AS THEIR HUMAN COMPANIONS.

**Reminder**

02/14/2015   DHLP (annual)
02/18/2017   Rabies (Canine)

| | |
|---|---|
| Invoice Total: | $43.00 |
| Total: | $43.00 |
| Balance Due: | $43.00 |
| Previous Balance: | $0.00 |
| Balance Due: | $43.00 |
| Master Card: | ($43.00) |
| Less Payment: | ($43.00) |
| Balance Due: | $0.00 |

*Pepper had 3 puncture wounds — 2 on dorsal neck — & 1 left side of head below ear*

*not infected —*

*on Antibiotics for surgical infection*

*Rabies vac given for 1 year booster vaccine*

**There is a 1.5% finance charge applied to all balances over 30 days. Contact us if you
need to set up a payment schedule.**

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                      No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/


EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS


B



# PLACER COUNTY GRAND JURY

11532 B Avenue
Auburn, CA 95603

Phone: (530) 886-5200
Fax: (530) 886-5201
Email: grandjury@placer.ca.gov

July 24, 2014

David Cramer
1860 Squires Canyon Court
Cool, CA 95614

Dear Mr. Cramer

This is to acknowledge receipt of your complaint to the Placer County Grand Jury. Your request will be considered by the Grand Jury. Should you have additional information, please forward it for inclusion in the Grand Jury's complaint file.

Law and policy prohibit the Grand Jury from disclosing any aspect of an inquiry. The Grand Jury cannot investigate all requests; therefore, you may wish to pursue other avenues to resolve your concerns.

Be assured your identity will be known only to the Grand Jury. We are sworn to secrecy to ensure confidentiality of your identity and any information you may supply to us.

Sincerely,

Sharon Stanners

Sharon Stanners
Foreperson
2014-2015 Placer County Grand Jury

# AUBURN POLICE DEI




AUBURN POLICE DEPARTMENT

Chief John F. Ruffcorn

**JOHN F. RUFFCORN**
Chief of Police
1215 Lincoln Way
Auburn, California 95603
Phone (530) 823-4237 ext. 201
Fax (530) 823-4224

Gary Hoppin
Sergear

(530) 823-4237 ext. 20
Fax (530) 823-422
1215 Lincoln Wa
Auburn, CA 9560:
ghopping@auburn.ca.gov

The Auburn Police Department wishes to provide you with the best professional law enforcement available anywhere.

In order to assist us in providing this service, we invite your suggestions for improving law enforcement in the community. This includes constructive criticism of the department or its procedures. Comments indicating dissatisfaction with manner of performance by officers, or information concerning commendable actions by our officers, which you feel should be brought to my attention.

Each report received will be thoroughly investigated and appropriate action taken. You will then be informed of the completed investigation. Your suggestions about improved procedures will be investigated, evaluated and implemented whenever feasible to do so.

If you wish to make a personal report, you may come to our office at 1215 Lincoln Way, Auburn, or call 530-823-4237 Ext 218. You will be received courteously, and thorough consideration will be given your report.

If you wish to register your report in writing, complete and mail this form. Please provide as much information as possible. Give your name and address so that we may contact you for further information if needed. Any information you give will be kept confidential if you request.

Please feel free to express yourself on any matter which you feel should be directed to my attention. Every letter of complaint, suggestion, constructive criticism or commendation will receive the police Chief's personal attention. Remember law enforcement is everybody's business, and your police department can only be as good as the citizens of Auburn want it to be.

Sincerely,

_____

John F. Ruffcorn, Chief of Police

JFR:sel

## PROTECTION - SERVICE - CONCERN

The Auburn Police Department is committed to serving and supporting our community through education, crime prevention, transparency, and mentoring. We realize that our success is directly related to a collaborated effort with our entire community.

**From:** David Cramer [mailto:kawika1@me.com]
**Sent:** Monday, November 24, 2014 11:01 AM
**To:** John Ruffcorn
**Subject:** Investigation


Dear John Ruffcorn,


I requested a police investigation into a matter at Ashley Dog Park on 1/2314-
1/25/14, Report # DR14-023-02. Two witnesses have testified they spoke with
police investigators about the incident. I have not heard from the police
regarding their conclusions of the investigation. I'm specifically interested in
whether the police have determined if the injury to the top of Ms Julie Beland's
head was a result of the incident. Any information you have would be
appreciated.


Sincerely,


David Cramer

I apologize about the delay, but I wanted to make sure I provided you with an accurate answer. However, at this time, I cannot provide you the findings of the internal investigation, because the investigation is not complete.

Please check back after the first of the year.

Thank you,

John Ruffcom, Chief of Police

Auburn Police Department

1215 Lincoln Way

Auburn, CA 95603

530.823.4237 Ext. 201

Fax-530.823.4224

*CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.*

PROTECTION ━ SERVICE ━ CONCERN

The Auburn Police Department is committed to serving and supporting our community through education, crime prevention, transparency, and mentoring. We realize that our success is directly related to a collaborated effort with our entire community.

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                                                    No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/

EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

C

**Jackson v. Superior Court of Merced County,** 98 Cal. App. 2d 183 (TOA)

*CA(1)*±**(1) Arrest—Arrest Without Warrant. — --**To justify an arrest without a warrant, the arrestor must proceed as soon as may be to make the arrest, and if instead of doing that he goes about other matters unconnected with the arrest, the right to make the arrest without a warrant ceases.

*CA(2)*⌖**(2)** An officer's authority to make a warrantless arrest for a misdemeanor is governed by Penal Code section 836, subdivision 1, which provides that an officer may arrest a person without a warrant "[whenever] he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." Such an arrest must be made at the time of the offense or within a reasonable time thereafter. ( **_Jackson_** v. *Superior Court* (1950) 98 Cal.App.2d 183, 185 [219 P.2d 879].) In other words, if the arrest is not made "reasonably contemporaneously" **[\*\*\*5]** with the commission of the offense, "the statutory basis for the arrest has evaporated." ( *People* v. *Williams* (1971) 17 Cal.App.3d 554, 562 [95 Cal.Rptr. 234].)

1-11 California Criminal Defense Practice § 11.03

*1-11 California Criminal Defense Practice § 11.03*

California Criminal Defense Practice

Copyright 2015, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

Division II ARREST & RELEASE<br>CHAPTER 11 ARREST<br>PART A. ARREST BY PEACE OFFICER

## § 11.03 Fourth Amendment Limitations

ARRESTS ARE SEIZURES OF THE PERSON AND MUST THEREFORE CONFORM TO THE "REASONABLENESS" REQUIREMENTS OF THE FEDERAL AND STATE CONSTITUTIONAL SEARCH AND SEIZURE PROVISIONS. [1] THESE SEARCH AND SEIZURE STANDARDS REQUIRE THAT AN ARREST BE BASED ON PROBABLE CAUSE TO BELIEVE THE PERSON ARRESTED HAS COMMITTED OR IS COMMITTING AN OFFENSE. [2] IF AN ARREST IS TO BE MADE WITHIN THE ARRESTEE'S HOME OR DWELLING, THE REASONABLENESS REQUIREMENT GENERALLY NECESSITATES THE SECURING OF A WARRANT. [3]

*22 Cal. App. 2d 687, \*; 72 P.2d 746, \*\*;*
*1937 Cal. App. LEXIS 196, \*\*\**

THE PEOPLE, Respondent, v. PAT CHAMBERS et al., Appellants

Crim. No. 1533

COURT OF APPEAL OF CALIFORNIA, THIRD APPELLATE DISTRICT

22 Cal. App. 2d 687; 72 P.2d 746; 1937 Cal. App. LEXIS 196

September 28, 1937, Decided

*CA(9)*±(9) Id.—Property—Right to Protect. — --Established law justifies one in the use of necessary means of protecting himself or his property against unlawful force and violence, when he has reasonable cause to believe such force is about to be exercised; and the state has a right to protect its citizens against threatened unlawful interference with their persons or property.

THE PEOPLE, Plaintiff and Respondent, v. PAMELA R. LEE, Defendant and Appellant.

B175291

COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT, DIVISION EIGHT

131 Cal. App. 4th 1413; 32 Cal. Rptr. 3d 745; 2005 Cal. App. LEXIS 1278; 2005 Cal. Daily Op. Service 7335; 2005 Daily Journal DAR 9976

August 16, 2005, Filed

*CA(3)*±(3) Criminal Law § 17—Defenses—Self-defense—Attacks by Animals.—
Conceptually, there is nothing in the elements of self-defense that requires the threat to come from a human agency. For self-defense, the defendant must actually and reasonably believe in the need to defend, the belief must be objectively reasonable, and the fear must be of imminent danger to life or great bodily injury. The focus is on the nature of the threat, rather than its source. It serves no public policy, and is neither logical nor fair, to deprive a defendant of the defense of self-defense because the threat of imminent harm comes from a dog and not from a person. The use of force in defense of oneself should be legitimate, whether or not the source of the threat is a human being. In other words, the use of force in self-defense should not be illegitimate because the source of the threat is not a human being. The trial court thus committed error when it refused to instruct on self-defense where defendant was charged with discharge of a firearm with gross negligence after she fired her handgun to scare away two unleashed dogs that she encountered while walking her dog.

People v. Wallace, 44 Cal. 4th 1032

CA(10)±(10) Criminal Law § 285—Evidence—Chain of Custody—Burden of Proof—Reasonable Certainty.—Under the rules for establishing chain of custody, the burden on the party offering the evidence is to show to the satisfaction of the trial court that, taking all the circumstances into account including the ease or difficulty with which the particular evi-

 **[*1036]** dence could have been altered, it is reasonably certain that there was no alteration. The requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received. Left to such speculation the court must exclude the evidence. Conversely, when it is the barest speculation that there was tampering, it is proper to admit the evidence and let what doubt remains go to its weight.

## [1] Exclusion of Evidence Under Evid. Code § 352

Evidence Code section 352 authorizes the court, in its discretion, to exclude evidence that is relevant and otherwise admissible if its probative value is substantially outweighed by the probability that its admission will (1) necessitate undue consumption of time; (2) create substantial danger of undue prejudice; or (3) create substantial danger of confusing the issues or misleading the jury. "In general, the trial court is vested with wide discretion in determining relevance and in weighing the prejudicial effect of proffered evidence against its probative value" [ People v. Edwards (1991) 54 Cal. 3d 787, 817, 1 Cal. Rptr. 2d 696, 819 P.2d 436] .

### *Practice Point*
**An objection of undue prejudice under section 352 does not apply in motions for summary judgment.** The court in *People ex rel. City of Dana Point v. Holistic Health* [(2013) 213 Cal. App. 4th 1016, 1029, 153 Cal. Rptr. 3d 810 held that the objection of "undue prejudice" under Evidence Code section 352 does not apply to a summary judgment motion. The court explained the primary purpose of that objection "is to pare away dross that 'uniquely tends to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues.' [Citation.] ... Shielding the fact finder from inflammatory material or misleading considerations, however, is not the issue at summary judgment, which consists of spotting material factual disputes, not resolving them." [Citation.] The court questioned whether it would ever be appropriate to apply the provisions of section 352 to a summary judgment motion noting it had found no case that had ever done so.

## [2] Probative Value of Evidence   (tending to prove or disprove)

Evidence can be excluded only if its probative value is "substantially outweighed" by the factors relied on by the party seeking exclusion [Evid. Code § 352]. The greater the probative value, the greater the danger posed by these factors must be to justify exclusion [ Kessler v. Gray (1978) 77 Cal. App. 3d 284, 291, 143 Cal. Rptr. 496] . The probative value of the evidence is a function of its purpose, strength, and overall importance to the proponent's case. Among the factors that will be considered in determining probative value are [ Burke v. Almaden Vineyards, Inc. (1978) 86 Cal. App. 3d 768, 774, 150 Cal. Rptr. 419 ; Kessler v. Gray (1978) 77 Cal. App. 3d 284, 291, 143 Cal. Rptr. 496 ; Thor v. Boska (1974) 38 Cal. App. 3d 558, 568, n.8, 113 Cal. Rptr. 296] :

• Nature of the evidence and the inferences to be drawn from it;

• Nature of the issue on which the evidence is offered and whether it goes to a main or collateral issue or to an issue on which the proponent has the burden of proof;

• Strength of the evidence;

• Nature and strength of other evidence available as proof on the issue on which the subject evidence is offered.

POINTER v. TEXAS

No. 577

SUPREME COURT OF THE UNITED STATES

380 U.S. 400; 85 S. Ct. 1065; 13 L. Ed. 2d 923; 1965 U.S. LEXIS 1481

March 15, 1965, Argued
April 5, 1965, Decided

CONSTITUTIONAL LAW §37

CRIMINAL LAW §50

due process -- confrontation with witnesses --

Headnote: *LEdHN(2)*⚓[2]

The Sixth Amendment's right of an accused to confront the witnesses against him is a
fundamental right, essential to a fair trial, and is made obligatory on the states by the
Fourteenth Amendment.

COURTS §781

CRIMINAL LAW §50

right of confrontation -- federal standards --

Headnote: *LEdHN(3)*⚓[3]

The guaranty of the Sixth Amendment protecting an accused's right to confront the
witnesses against him is to be enforced against the states under the Fourteenth Amendment
according to the same standards that protect this right against federal encroachment.

CRIMINAL LAW §50

guaranty of confrontation --

Headnote: *LEdHN(4)*⚓[4]

A major reason underlying the constitutional confrontation rule is to give a defendant
charged with crime an opportunity to cross-examine the witnesses against him.

**People v. Williams, 58 Cal. 4th 197**

CA(23)⌖**(23)** Nor did the trial court's order violate defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution. The Sixth Amendment guarantees the right of an accused in a criminal prosecution " 'to be confronted with the witnesses against him.' " (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 678 [89 L. Ed. 2d 674, 106 S. Ct. 1431] (*Van Arsdall*).) "The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, *Pointer* v. *Texas*, 380 U. S. 400 [13 L. Ed. 2d 923, 85 S. Ct. 1065] (1965), 'means more than being allowed to confront the witness physically.' *Davis* v. *Alaska* [(1974)] 415 U. S. [308,] 315 [39 L. Ed. 2d 347, 94 S. Ct. 1105]. Indeed, ' "[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" ' (*Id.*, at [pp.] 315–316 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. **[*264]** 1940)) (emphasis in original)." (*Van Arsdall*, at p. 678.) The high court has said that "when the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness'[s] name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." (*Smith v. Illinois* (1968) 390 U.S. 129, 131 [19 L. Ed. 2d 956, 88 S. Ct. 748], fn. omitted; see *Alford v. United States* (1931) 282 U.S. 687, 692 [75 L. Ed. 624, 51 S. Ct. 218] ["Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them."].)

**People v. Cromer, 24 Cal. 4th 889**

CA(2)⌖**(2)** The constitutional right implicated here is the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." (U.S. Const., 6th Amend; *Pointer* v. *Texas* (1965) 380 U.S. 400, 406 [85 S. Ct. 1065, 1069, 13 L. Ed. 2d 923] [holding this federal constitutional right enforceable in state court proceedings]; see also Cal. Const., art. I, § 15; Pen. Code, § 686.) This confrontation right seeks "to ensure that the defendant is **[*897]** able to conduct a 'personal examination and cross-examination of the witness, in which [the defendant] has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' " ( *People v. Louis* (1986) 42 Cal. 3d 969, 982 [232 Cal. Rptr. 110, 728 P.2d 180], quoting *Mattox v. United States* (1895) 156 U.S. 237, 242-243 [15 S. Ct. 337, 339, 39 L. Ed. 409].) To deny or significantly diminish this right deprives a defendant of the essential means of testing the credibility of the prosecution's witnesses, thus calling "into question the ultimate ' 'integrity of the fact-finding process.' ' " ( *Chambers v. Mississippi* (1973) 410 U.S. 284, 295 [93 S. Ct. 1038, 1046, 35 L. Ed. 2d 297].)

6

BRADY v. MARYLAND

No. 490

SUPREME COURT OF THE UNITED STATES

373 U.S. 83; 83 S. Ct. 1194; 10 L. Ed. 2d 215; 1963 U.S. LEXIS 1615

March 18-19, 1963, Argued
May 13, 1963, Decided

CONSTITUTIONAL LAW §840

due process -- prosecution's suppression of evidence. --

Headnote: *LEdHN(3)* [3]

The suppression by the prosecution of evidence favorable to and requested by an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

**Carrillo v. County of L.A., 798 F.3d 1210**

Plaintiffs alleged that police officers failed to disclose evidence that would have cast serious doubt on the testimony of key prosecution witnesses. The panel held that the law in 1984 clearly established that police officers had to disclose material, exculpatory evidence under **Brady** v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and that any reasonable officer would have understood that Brady required the disclosure of the specific evidence allegedly withheld in these cases.

MIRANDA v. ARIZONA

No. 759

SUPREME COURT OF THE UNITED STATES

384 U.S. 436; 86 S. Ct. 1602; 16 L. Ed. 2d 694; 1966 U.S. LEXIS 2817; 10 Ohio Misc. 9; 36
Ohio Op. 2d 237; 10 A.L.R.3d 974

February 28, 1966-March 1, 1966, Argued
June 13, 1966, Decided *

EVIDENCE §680

statements made at custodial interrogation -- admissibility --

Headnote:*LEdHN(1)*⚓[1]

The prosecution may not use statements, whether exculpatory or inculpatory, stemming
from custodial interrogation of the defendant unless it demonstrates the use of procedural
safeguards effective to secure the privilege against self-incrimination; "custodial
interrogation" is questioning initiated by law enforcement officers after a person has been
taken into custody or otherwise deprived of his freedom of action in any significant way.

CRIMINAL LAW §46.4

police interrogation -- right to counsel --

Headnote:*LEdHN(4)*⚓[4]

If an individual held for interrogation by a law enforcement officer indicates in any manner
and at any stage of the process that he wishes to consult with an attorney before speaking,
there can be no questioning.

CRIMINAL LAW §46.4

right to counsel -- at police interrogation --

Headnote:*LEdHN(27)*⚓[27]

The need for counsel to protect the Fifth Amendment privilege against self-incrimination
comprehends not merely a right to consult with counsel prior to questioning by a law
enforcement officer, but also to have counsel present during any questioning, if the accused
so desires.

207 Cal.App.4th 1401
Court of Appeal, Fourth District, Division 1, California.

In re Z.A., a Person Coming Under the Juvenile Court Law.

The People, Plaintiff and Respondent,
v.
Z.A., Defendant and Appellant.

No. D060033.
July 26, 2012.

In re Z.A. (2012) 207 Cal.App.4th 1401 [144 Cal.Rptr.3d 577]

**Criminal Law**

**Necessity in general**
Statements obtained in violation of *Miranda* are inadmissible to establish guilt.

In re Z.A. (2012) 207 Cal.App.4th 1401 [144 Cal.Rptr.3d 577]

35 Cal.4th 514
Supreme Court of California

The PEOPLE, Plaintiff and Respondent,
v.
Richard STITELY, Defendant and Appellant.

No. S028970.
March 21, 2005.Certiorari Denied Oct. 3, 2005.See 126 S.Ct. 164.

People v. Stitely (2005) 35 Cal.4th 514 [26 Cal.Rptr.3d 1, 108 P.3d 182]

<u>**Criminal Law**</u>

<u>Necessity in general</u>
Statements obtained in violation of a defendant's *Miranda* rights are inadmissible to prove guilt in a criminal case.
U.S.C.A. Const.Amend. 5.

People v. Stitely (2005) 35 Cal.4th 514 [26 Cal.Rptr.3d 1, 108 P.3d 182]

10) "

1. *People* v. *Riser* (1956) 47 Cal.2d 566 [305 P.2d 1] sets forth the rules for establishing chain of custody: 'The burden on the party offering the evidence is to show to the satisfaction of the trial court that, taking all the circumstances into account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain that there was no alteration. [¶] The requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received. Left to such speculation the court must exclude the evidence. [Citations.] Conversely, when it is the barest speculation that there was tampering, it is proper to admit the evidence and let what doubt remains go to its weight.' [Citations.]" (*People v. Diaz* (1992) 3 Cal.4th 495, 559 [11 Cal. Rptr. 2d 353, 834 P.2d 1171].) [*1062]

The suppression or withholding of material evidence by the prosecution which is favorable to a person accused of a crime is a violation of due process of law and renders a conviction void.  It stands on the same footing as would the knowing use of perjured testimony "to procure the conviction and imprisonment of a defendant and is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation ."
Mooney v. Holohan, 294 U.S. 103, 122.

Image Not Available

1. *CA(4)*"TYPE=PICT;ALT=" **(4) Criminal Law § 122—Interrogation; Advice as to Constitutional Rights—When in Custody—Determination—Relevant Circumstances. — --**In determining whether a defendant has been subjected to custodial interrogation, a court must examine a variety of relevant circumstances. Among them are whether contact with law enforcement was initiated by the police or the person interrogated, and if by the police, whether the person voluntarily agreed to an interview; whether the express purpose of the interview was to question the person as a witness or a suspect; where the interview took place; whether police informed the person that he or she was under arrest or in custody; whether they informed the person that he or she was free to terminate the interview and leave at any time and/or whether the person's conduct indicated an awareness of such freedom; whether there were restrictions on the person's freedom of movement during the interview; how long the interrogation lasted; how many police officers participated; whether they dominated and controlled the course of the interrogation; whether they manifested a belief that the person was culpable and they had evidence to prove it; whether the police were aggressive, confrontational, and/or accusatory; whether the police used interrogation techniques to pressure the suspect; and whether the person was arrested at the end of the interrogation. No one factor is dispositive. Rather, a court looks at the interplay and combined effect of all the circumstances to determine whether on balance they created a coercive atmosphere such that a reasonable person would have experienced a restraint tantamount to an arrest.

13

Pointer v. Texas (1965) 380 U.S. 400, 85 S Ct. 1065, 13 L.ED.2d 923
The

1. Sixth Amendment provides in part that:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses [*401] against him . . . and to have the Assistance of Counsel for his defence."

Two years ago in *Gideon* v. *Wainwright, 372 U.S. 335,* we held that the Fourteenth Amendment makes the Sixth Amendment's guarantee of right to counsel obligatory upon the States. The question we find necessary to decide in this case is whether the Amendment's guarantee of a defendant's right "to be confronted with the witnesses against him," which has been held to include the right to cross-examine those witnesses, is also made applicable to the States by the Fourteenth Amendment.

14

# PENAL CODE
# SECTION 692-694

692.   Lawful resistance to the commission of a public offense may be
made:
   1. By the party about to be injured;
   2. By other parties.


693.   Resistance sufficient to prevent the offense may be made by
the party about to be injured:
   1. To prevent an offense against his person, or his family, or
some member thereof.
   2. To prevent an illegal attempt by force to take or injure
property in his lawful possession.


694.   Any other person, in aid or defense of the person about to be
injured, may make resistance sufficient to prevent the offense.

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

David Cramer
     Plaintiff,

v.                                        No 2-15-cv-00462 KJM-AC

City of Auburn et al,
     Defendants.

_____/

## EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

D



KAISER FOUNDATION HOSPITALS

ROS-HOSPITALS
1600 EUREKA ROAD
ROSEVILLE, CA 95661-3027
Emergency Record

BELAND,JULIE L
MRN:▬▬▬▬
DOB: ▬▬▬▬, Sex: F
Adm:1/23/2014, D/C:1/23/2014

## Medical Screening Examination (continued)

### Pain Assessment (continued)

| Date and Time | Score | Type | Type | | | | | |
|---|---|---|---|---|---|---|---|---|
| 01/23/14 1536 | 4 | -- | -- | -- | -- | -- | -- | CB |

### Domestic Violence Assessment

| Date and Time | DV | | DV | | Have you ever felt afraid of your partner, ex-partner or any family member? | | Are you in a relationship in which you have been physically hurt or felt threatened? | | Who |
|---|---|---|---|---|---|---|---|---|---|
| 01/23/14 1536 | -- | | -- | | | | | | |

### Psychological Assessment

| Date and Time | | | Are you at risk of hurting yourself or others? | | Who |
|---|---|---|---|---|---|
| 01/23/14 1536 | | | | | |

## NURSING ASSESSMENT

### Current OP Meds Reported as Taken as of as of 1/23/2014

Medication

[redacted]

1   witnesses, there was Julie Beland, who got struck, Michael

2   Bailey Corbett.  I am not sure of his first name.

3       MR. BASS:  Robert.

4       MR. CRAMER:  Jamie Scannell.  I turned around.  The frames

5   of Beland's glasses were on her nose.  The lenses of her

6   glasses -- the lenses ended up in the grass.  She -- when I

7   turned to face Bailey, she reached down and she picked up the

8   lenses.  I turned back to her.  She -- I believe she said I am

9   calling the police.  She turned around and she walked back to

10  where she was sitting.  She was crying at the time.  And Bailey

11  turned around and walked with her.  And I think all of them

12  gathered by the -- all four of them.  I never really saw Jamie

13  Scannell the entire time.  The only reason I know she was there

14  is because of the testimony.

15      I continued on and went to sit at these concrete tables

16  where I was headed and waited for the police.  I waited for I

17  would say ten minutes and nothing was happening.  I couldn't

18  tell what they were doing.  I had a jacket like this.  My phone

19  was in my jacket.  I checked my pockets.  I didn't think I had

20  my phone.  There was no other dogs at the park, and so I was

21  going to go to my truck and get my phone.

22      I walked to the gate.  As I walked to the gate, the group

23  came down from the dog statue to the entrance.  I was -- I don't

24  know, several feet from the gate.  I moved forward.  I put one

25  hand on the gate and Beland came down.  She turned her back to

26  me and she just grabbed hold of the fence and gate and said, you

27  know, you are not going anywhere.  I am pressing charges.  The

28  police are coming and I am pressing charges.  That is when I

1    MR. BASS:  Three or four.

2    THE COURT:  Anything from you, Mr. Cramer, on this issue?

3    MR. CRAMER:  Yes.  I would like to submit a motion.

4    THE COURT:  No.  On the issue of the breaking of the

5    Chuck-It, I am going to treat this as a motion in limine as

6    opposed to a motion to suppress.  The motion to suppress is to

7    suppress something that may have been illegally obtained.  This

8    is more of a spoliation type of motion.  It can be treated and I

9    am going to treat it as a motion in limine, which is a motion

10   pending trial.

11       If you have anything further to offer on this, I am ready

12   to rule on this, Mr. Cramer.  Mr. Bass.

13       MR. BASS:  I don't know the point of the last paragraph is,

14   but I would --

15       THE COURT:  I am going to address that.

16       MR. BASS:  Thank you.

17       THE COURT:  All right.  Here is what we are going to do.

18   First of all, the People will be entitled to offer the Chuck-It

19   into evidence in front of the jury.  The court however will

20   instruct the jury at that point in time that they are not to

21   consider the fact that it is in four pieces as any evidence as

22   to the guilt of Mr. Cramer in this matter, that the evidence is

23   that it was broken only once.  That the further breakage was

24   conducted by law enforcement.  Whether you want to examine them

25   on that after that admonition, I don't know, Mr. Cramer.  I am

26   going to leave that up to you.

27       I am going to add a further admonition to you though,

28   Mr. Cramer, is you will not be permitted to ask questions of the

1  officers regarding Penal Code Section 141(b), the damaging or

2  destruction of evidence.  So the jury gets to see it.  The jury

3  gets told that it was not in that condition when the incident

4  occurred.  Only that it was two pieces at that time.

5      MR. BASS:  Thank you, your Honor.

6      THE COURT:  Mr. Cramer, any questions about my ruling?

7      MR. CRAMER:  I don't think that that is correct.  I think

8  the reason that you isolate evidence is so that it comes to

9  court the way it came from the incident.  It is not that way any

10  more.

11      THE COURT:  And that's right.  I am going to tell the jury

12  that they are not to consider the fact that it is in four pieces

13  as any evidence that you committed any violation.  They will be

14  told through the witnesses, through the people that it was in

15  two pieces when they obtained it.  That way we have got the same

16  evidence -- the jury is hearing the same evidence and there will

17  be an instruction not to consider it in any other shape.  All

18  right?

19      MR. CRAMER:  What about the force involved to break it?

20      THE COURT:  Insofar as the officer testifying as to the

21  amount of force?

22      MR. CRAMER:  My question for self-defense is did I use

23  reasonable force or did I try to kill her?

24      THE COURT:  Do you want the officer testifying that they

25  hit the back of the chair with it and it broke into two more

26  pieces?

27      MR. CRAMER:  Well, the fact that they hit the back of the

28  chair is a testament that they believed I hit her on the top of

24

1  assignment, when I was dispatched to Ashford park, specifically

2  the dog park, Ashley Memorial dog park for a physical dispute

3  call.

4  Q.   And where -- what did you first do when you got to the dog

5  park?

6  A.   Well, I had to walk to the rear of Ashford park where the

7  dog park is located.  And while walking toward the park, the

8  actual dog park, I spoke with -- there was some Auburn

9  Recreation District employees working, maintaining the land.

10  And I spoke with one that was particularly close to the dog

11  park, and I asked him if there was some kind of a fight.

12  Q.   Okay.  Now without going into the details of what he said,

13  were you able to confirm that there had been a fight that had

14  occurred?

15  A.   Yes.

16  Q.   And so were you alone at this point?

17  A.   At that point I was.

18  Q.   At any other point did another officer show up?

19  A.   My sergeant, Sergeant Michael Garlock showed up shortly

20  later as I actually reached the dog park.

21  Q.   Now so you have confirmed or spoken with one person.  So

22  can you give us what you observed generally about the dog park?

23  A.   The dog park, at that time of the day it was Thursday

24  morning.  There wasn't a lot of activity.  There weren't that

25  many pet owners, not a lot of dogs like you may see later in the

26  afternoons, evenings or weekends.  Weekends it is rather busy.

27  Q.   So you are familiar with that dog park?

28  A.   Fairly familiar.

68

1      THE COURT:   Go ahead.

2                      **JAMES DALTON**

3   called as a witness on behalf of the People, being first duly

4   sworn, testified as follows:

5                      DIRECT EXAMINATION

6   BY MR. BASS:

7   Q.    Good morning.  Officer Dalton, if you could please

8   introduce yourself to the jury, including your occupation.

9   A.    I have been a police officer for 20 years, 19 years with

10  the Auburn police, one and a half years with Marysville police.

11  I have -- during those years, I have served in different

12  capacities, different assignments.  I have been a detective.  I

13  have been a school resource officer.  I am a crime scene

14  investigator.  Several other things as well.

15  Q.    And I am sorry if you mentioned this already.  How long

16  have you been a police officer?

17  A.    Over 20 years.

18  Q.    How long with the Auburn PD?

19  A.    19, almost 20.

20  Q.    And so you mentioned your training involving several

21  different types of investigations.  Assault and battery being

22  one of those crimes?

23  A.    Yes.  It is one of the more common types of crimes that we,

24  myself investigate.

25  Q.    So now bringing your attention to January 23rd.  Where were

26  you -- what were you doing on January 23rd at approximately

27  10:15 a.m., and that is in 2014?

28  A.    Yes.  I was on duty.  I was in uniform, working my patrol

                                                              67

1  became angry and started yelling at him from the east edge of

2  the park, yelling at him, you hit my dog, you hit my dog.  She

3  used a lot of expletives and she -- before he knew it, she was

4  up in his face, yelling at him, using the F word, telling him to

5  get out of there.

6  Q.   Okay.  And did he then admit that he hit her with

7  anything?

8  A.   He told me that he hit her sunglasses off with the

9  Chuck-It.

10  Q.   Okay.  Now did you ask him further why he would hit the

11  sunglasses off of her face?

12  A.   No.  I didn't.

13  Q.   Did he explain further?

14  A.   He just said that he was upset with her demeanor and -- he

15  didn't state any specific reason why he did that.

16  Q.   Did it make sense to you that someone would try and hit

17  somebody's glasses off?

18  A.   No.

19  Q.   Did you feel that it comported with the other stories that

20  you had heard?

21  A.   No.

22  Q.   In your experience did the defendant seem to accept what

23  had happened as an act of self-defense?

24  A.   I wouldn't say that.  I would say that he was minimizing

25  his involvement.

26  Q.   And when you say minimize, how do you mean?

27  A.   Well, typically when you -- from my experience as a law

28  enforcement officer when we speak to people that may have made a

73

1  mistake, poor judgment or reacted in a manner that may be a

2  crime, what they typically will do is they will admit to parts

3  of the facts and then they will not admit to the actual part

4  that is reaching the threshold of a crime.   Sometimes they will

5  try to say that -- it is just semantics really.

6  Q.   So the sunglasses, did he know that -- did he say anything

7  about the sunglasses?  Did he actually knock them off her face?

8  What did he tell you?

9  A.   Yeah.  He said he knocked them off her face.

10  Q.   Okay.

11  A.   And I told him that he actually hit her in the head.

12  Q.   And what did he say to that?

13  A.   He said he didn't realize he had done that.

14  Q.   Okay.  Did you conduct a second interview with the

15  defendant?

16  A.   I did.  Two days later.

17  Q.   Why did you conduct a second interview?

18  A.   Well, due to the circumstances of the initial call and the

19  fact that all my witnesses had left during my interview with

20  Mr. Cramer, I needed to call back everybody.  And I learned more

21  information, more detail about what had happened, and I needed

22  to speak with Mr. Cramer about that.

23  Q.   So where did you meet with Mr. Cramer?

24  A.   He agreed to meet me at the dog park on Saturday morning

25  the 25th.

26  Q.   Did you meet the other people at the same time or how did

27  you interview those?

28  A.   I spoke with the witnesses again the day after the initial

74

1    MR. BASS:  I have no need to subject Officer Dalton to

2  recall.

3    THE COURT:  Raise your right hand and be sworn.

4    THE CLERK:  Do you swear that the testimony you are about

5  to give in this hearing will be the truth, the whole truth, and

6  nothing but the truth, so help you God?

7    THE WITNESS:  I do.

8    THE COURT:  State your full name and spell your last.

9    THE WITNESS:  My first name is Michael, and last name is

10  Garlock.  That is spelled G A R L O C K.

11    THE CLERK:  Thank you.

12    THE COURT:  You may examine.

13    MR. BASS:  Thank you.

14                    **MICHAEL GARLOCK**

15  called as a witness on behalf of the People, being first duly

16  sworn, testified as follows:

17                    DIRECT EXAMINATION

18  BY MR. BASS:

19  Q.   Good morning, Officer, Sergeant.  Could you introduce

20  yourself to the jury by your occupation?

21  A.   As I stated, my name is Michael Garlock.  I work as a

22  patrol sergeant for the Auburn police department.  I have been

23  at that department for the last -- little over 18 and a half

24  years.

25  Q.   Okay.  And do you have any training in terms of

26  investigations?

27  A.   Yes.

28  Q.   And what training would that include?

                                                              114

1   is to conduct the interviews.

2   Q.   And you are there for safety?

3   A.   Yes.

4   Q.   So let's talk about the Chuck-It.

5   A.   Okay.

6   Q.   What role did you play in collecting the Chuck-It?

7   A.   My role was to basically collect the evidence, which I did.

8   Which is this item right here.

9   Q.   And how do you identify that item?

10  A.   It is painfully obvious.  I remember it being orange, and I

11  remember the breaks.  And my initials are on the bag that it was

12  booked into.  And my initials are also on the pieces.  My

13  initials are on -- MGS, that is my badge number and my

14  initials.

15  Q.   Can you walk us through how you marked that specific piece

16  of evidence into evidence?

17  A.   When it was handed to me, it stays in my possession until I

18  get back to the station.  And then I secure it in a locker with

19  a key until I am ready to process it, which means basically mark

20  it and package it, which is what I did.

21  Q.   Okay.  Now can you explain -- we want to know why there is

22  an additional piece there.  Can you explain how that happened?

23  A.   These two pieces?

24  Q.   Yes.

25  A.   That shift changed that day on the day of the incident.

26  The oncoming shift, which comes on at 7 o'clock p.m.  The on

27  duty supervisor was curious about the case.  And we usually

28  brief the oncoming supervisor what event happened that day and

117

1    weapon?

2    A.    In his opinion.   In his opinion he was trying to

3    demonstrate what he thought the amount of force would be for

4    something to be classified as an assault with a deadly weapon.

5    Q.    I am sorry.

6    A.    That is what he was trying to demonstrate and in the

7    process he broke the Chuck-It.

8    Q.    And you didn't like that, did you?

9    A.    No.   That is evidence.   I know as having been an

10   investigator, you are not supposed to break evidence.

11   Q.    It is illegal to break evidence, isn't it?

12   A.    I am sure if it is intentional, that would be illegal,

13   yes.

14   Q.    But the Chuck-It was in your custody, correct?

15   A.    Technically speaking, it was in my custody, yes.

16   Q.    So your responsibility?

17   A.    Yes.

18   Q.    Now -- excuse me, Officer.

19        THE COURT:   What exhibit are you showing the witness?

20        MR. CRAMER:   Beg your pardon.

21        THE COURT:   What exhibit are you showing the witness?

22        MR. CRAMER:   Exhibit 20.   This is the photograph of Julie

23   Beland's injuries.

24   Q.    BY MR. CRAMER:   Did Officer Forman ever explain to you what

25   was analogous as far as the back of the chair to her head?

26   A.    I am assuming he didn't want to hit a real person with the

27   Chuck-It, so he hit the back of the chair.

28   Q.    Which is a relatively flat surface?

1  Q.   You got up and started walking towards me?

2  A.   Correct.

3  Q.   I beg your pardon.

4  A.   Correct.

5  Q.   Did you state that to any of the officers that it was your

6  intention to defend Ms. Beland?

7  A.   Yes.

8  Q.   So the expression on your face might have been aggressive

9  rather than friendly?

10 A.   I don't know.  Somebody stepped between me and you and

11 showed me a picture on a telephone and said I called the cops,

12 and that was the end of it as far as I was concerned.

13 Q.   After I struck Ms. Beland's dog, did you see me go to a

14 concrete bench and sit down for about ten minutes?

15 A.   No.

16 Q.   You saw me immediately go towards the gate?

17 A.   No.

18 Q.   What did I do after I struck Ms. Beland's dog?

19 A.   You stood there and you were rooted until she came over and

20 started explaining to you that she was upset.

21 Q.   After I struck her dog, she came to me?

22 A.   Correct.

23 Q.   And then I struck her?

24 A.   Correct.

25 Q.   And then what did I do?

26 A.   Stood there.

27 Q.   I just remained there?  I didn't go sit at the concrete

28 bench?

159

1    A.    Yes.  I am sorry.  I am nervous.

2    Q.    It is okay.  So you said he hit --

3    A.    Hit Piper in her left side.  She was standing up.

4    Q.    What did she do?

5    A.    She yelped really loud.

6    Q.    And then that is when you got up?

7    A.    Hm-hmm.

8    Q.    Can you explain to us your path towards him?  What was

9    going on?

10   A.    I went straight out.  In fact I was using a cane that day

11   because I had just gotten out of the cast and I was a little

12   unsteady, but I didn't really need it to walk.  So I was limping

13   and stuff, so I left the cane there.  When I jumped up, I didn't

14   even think about it.  I walked towards him and I said, hey, what

15   the F.  If you have a problem, talk to somebody.  You don't go

16   around hitting people's dogs here.  That isn't how we handle

17   things.  You need to take your dog and go, and I pointed towards

18   the gate.

19        And he had been walking towards me at about the same pace I

20   had been walking towards him.  So we kind of met up in the

21   middle.  And he said your dog was being aggressive, and I said

22   no, the dogs were just playing.  And the next thing I know, he

23   hit me.  I mean it was just whack in the side of the head.  I

24   just -- that was it.  That was the entire conversation.

25        So I was just -- it wasn't -- I just have never experienced

26   anything like that.  That is not how people deal with things

27   there.  We don't go around hitting dogs.  If you have a problem

28   with someone and their dog, you talk to them.  If they are not

                                                              193

1  responsive, you have options.  You can take your dog and leave.
2  You can take your dog to another part of the park, but you have
3  options.

4  Q.   So at that moment that he hit you, if you can just -- if we
5  can slow down and we can go piece by piece through that.  On
6  what side of your face gets hit?

7  A.   This side.  (Indicating).  Right here.

8  Q.   So he -- did he use his right hand?

9  A.   Yes.

10 Q.   And what happened to your glasses?

11 A.   Well, first of all I didn't see him -- his arm come up.  I
12 mean we were having a heated conversation, but I didn't see his
13 arm raise at all.  So all of a sudden I just was slammed in the
14 side of the head, and I didn't know what had happened at all.  I
15 didn't see his arm come up.  I didn't see his facial expression
16 change, nothing.  In fact his facial expression was just blank.

17       And he hit me with the Chuck-It right about here.  I think
18 that the top part of it must have impacted right here because
19 that is where the huge part of the bruise was.  I still have the
20 bump on the side of the head though.  The bump goes like right
21 here, and it is right up here, all through my head right here.
22 I was wearing some very large designer prescription sunglasses
23 because they are in.  Anyway they are large framed and large --
24 this piece right here is large.

25       And when he hit me, I am guessing it just smashed it into
26 my eye and the side of my head and in my eye because my glasses
27 were on the ground, and I couldn't see and the lenses were found
28 in pieces.  And someone helped me pick them up and --

194

1          THE WITNESS:  I am sorry.

2          MR. BASS:  That is okay.

3     Q.    BY MR. BASS:  Let's go from when the police get there.  You

4     give your statement; is that correct?

5     A.    Yes.  I think it was Officer Dalton I believe who took my

6     statement.

7     Q.    Okay.  And after you gave your statement, did you stay or

8     what did you do after you had given your statement to Officer

9     Dalton?

10    A.    I said I will stay as long as you need me to, but I am not

11    feeling well and I really want to go.  But what I meant was I

12    want to sit down.  My back was really hurting and I needed to

13    sit down because we were all congregating there and there was

14    nowhere to sit right by the gate.

15         At that point I had lost my phone again, so I told -- after

16    he was done speaking with me, he went to speak with the

17    defendant and they moved off towards the other part of the park.

18    And I told Officer Garlock, who was stationed at the gate, that

19    I was going to go up to my car and look for my phone.  Things

20    weren't making sense.  I don't know why my phone would have been

21    at my car if I lost it in the park, but somehow I thought it was

22    there.  And I couldn't find it and I was looking everywhere.  So

23    that happened after I spoke with the officer.

24    Q.    Just one final question.  The people that were around you,

25    do you know them?  Do you know anyone at the park on that day?

26    A.    No.  It was odd actually.  The only person I knew to even

27    wave to was a woman with two pugs named Jamie Scannell.  I

28    didn't know her name at the time.  I found out later what her

                                                              198

1    Just a moment.  Let me back this up a little bit.

2    (Brief interruption).

3    THE COURT:  The ruling stands.  Continue, please,

4  Mr. Cramer.

5  Q.   BY MR. CRAMER:  Ms. Emmert, did you contact the police

6  about the incident?

7  A.   Eventually.

8  Q.   How did you do that?

9  A.   You asked me to.

10  Q.   How did you contact the police?

11  A.   I went down to the police station.

12  Q.   And told them what you saw?

13  A.   Hm-hmm.  I had an interview with an officer.

14  Q.   Okay.  And did the police ever contact you again about the

15  situation?

16  A.   I had a phone call from the police department.

17  Q.   Do you remember when that was?

18  A.   I don't.

19  Q.   Can you give a rough idea?  Was it weeks after, months

20  after?

21  A.   It wasn't -- the two contacts with the police were a

22  distance apart.  I can't tell you how much of a distance apart

23  they were.  One was a personal contact where I went down to

24  the police station, and the second time was a call from the

25  police.

26  Q.   And that call, you don't have any idea when that was?  This

27  happened in the winter.  Was it in the spring or the summer?

28  A.   It was a distance apart.  I can't tell you how long.  It

248

1  going to put him over here.  He did testify that he was sitting
2  over here.

3      MR. BASS:  Your Honor, may I object just as to a general
4  presentation?  The record will not clearly show what over here,
5  over here and over here means.  Is there a way --

6      THE COURT:  Perhaps we could designate a north direction on
7  your drawing, Mr. Cramer.

8      MR. CRAMER:  So north is here.  South is here.  East is up
9  here, and west is roughly down here.  I think it might be skewed
10 slightly.  I think for our purposes this will work.  And --

11     THE COURT:  Again I think Mr. Bass's point was good.
12 Mr. Cramer, perhaps you could kind of reorient us to where
13 people are at and the various items and directions.

14     MR. CRAMER:  Okay.  So in the southwest corner is the
15 waterfall.  I will put a W.

16     THE COURT:  That is perfect.

17     MR. CRAMER:  W for waterfall.  I will put a WF since there
18 is west on here.  There is a pool up here, two swimming pools.
19 There is a walkway around the perimeter.  The table, concrete
20 tables that I was headed for is in this west direction here.
21 And the entry gate is a small I would estimate about fifteen by
22 fifteen double-gated entry right in here.

23     I came in -- is that clear enough for you?  Entry.  I came
24 in from the entry and started along this path here.  Immediately
25 Mr. Bailey's large German shepherd and Ms. Bailey's, I forget
26 the breed of her dog, started running with my dog.

27     I walked to about the center of the field right here, and
28 as I was walking, I was watching the dogs play.  The big German

                                                              254

1  shepherd was very dominant, very interested in my dog.  My ~~~
2  is a puppy, very high energy.  Loves to run and loves to be
3  chased.  So the reason I bring the Chuck-It is if there is no
4  dogs together to run, I can at least exercise her.

5       I had the Chuck-It in my right hand, I believe a leash in
6  my left hand.  I am not positive.  Sometimes I throw the leash
7  around my neck.  Sometimes I will stuff it in my pocket.  I am
8  not positive.  All of the witness testimony says that the dog
9  activity was around me.  It took place in this northern area
10  here.  There is a park bench that backs up to the perimeter
11  fence right in this area here.

12       The two dogs cornered my dog behind this *Bench* fence.  When I saw
13  that, I stopped and looked directly at the animals.  My dog
14  bolted out from behind the fence with her ears back and her tail
15  between her legs.  I took that as a sign that she was running
16  away from these dogs, rather than playing with them.  So I
17  became very interested in their activity.  The bigger German
18  shepherd was on one side of her, biting her on the neck, the top
19  of the head and the back.  The smaller dog was kind of nipping
20  at her heels and her haunches.  This -- it is a game they play
21  when dogs come in.  If you were watching the two dogs on the
22  outside, you would think they are playing.  If you are watching
23  the dog in the center and her reaction to it, you may not get
24  the same opinion.

25       When I decided that it was too rough, I called my dog and
26  she is a puppy.  She was a rescue, so I don't know exactly when
27  she was born.  The vet estimated that it was the end of October.
28  So she had just turned one.  She -- I am not sure where in this

255

1  area that she came from.  But I called her and she immediately
2  came to me.  And the manner in which she approached me, she came
3  and she hit the deck.  I instinctively took a knee over her like
4  that and she was under me.

5       I came face to face with Mr. Beland's German shepherd,
6  literally from me to you.  I have always gotten along with dogs.
7  I have never had a problem with them.  I don't think it was a --
8  I think it was a sexual aggression, rather than -- he loved my
9  dog rather than hated my dog.  I think he had been playing
10 perfectly well with Ms. Beland's dog.

11      And when my dog introduced into the situation, it was kind
12 of an -- I would say it was a dominance thing.  The big male
13 wanted to dominate her and the other male or the other female, I
14 am not sure exactly.  But anyway I was on my knee over my dog.
15 That is when Michael Bailey was seated down here.  He stood up
16 in front of his chair and he called his dog.  His dog -- I am
17 not sure if it is a measure of how much training it has or
18 whether it was just really interested in my dog, but it didn't
19 go exactly back to him.  It was like headed back his direction.
20 When it got about halfway to the distance, I let my dog back up.
21 Mr. Bailey's dog returned, immediately turned around.  And I am
22 not sure where Beland's dog was, but again the play was right
23 around in this area.  All of the dogs congregated here.

24      I may have taken a step or two in this direction and called
25 my dog again.  This time she came over to me, exact same
26 situation.  She dove down to the ground.  I went over her.
27 Mr. Bailey's dog came right into my face.  This time I stayed
28 over my dog.  Mr. Bailey walked from where he was sitting here,

                                                            256

1    calling his dog in a direction like this.  His dog -- his
2    wandered back to him.  And when Mr. Bailey got about here, his
3    dog was within, within reach.  And so I let my dog up again.

4         Ms. Beland's dog had come in behind me and her dog came
5    around the front of me and took my dog by the neck.  I took the
6    Chuck-It.  I was still on the ground.  I reached forward and I
7    slapped her on the butt.  I didn't -- I thought I had seen
8    Ms. Beland's dog before.  I didn't know -- I had never met
9    Ms. Beland.  I had seen her at the park.  But I was pretty sure
10   that I had seen her dog before, and it really could have been
11   playing with the dog.  I don't know that she actually bit my
12   dog.  She had it by the neck when I hit her on the butt.

13        So that is when Ms. Beland -- that is when I found out
14   where she was because as soon as I hit her, she screamed.  She
15   got up.  She said -- the first thing she said was who the hell
16   do you think you are.  And then she started towards me with her
17   arm in the air, yelling get the F out of here.  She came from
18   this direction.

19        Bailey didn't take control of his dog.  The last I saw of
20   his dog, it kind of took off in this direction.  I remember
21   seeing Ms. Beland's dog duck in behind her after she passed
22   somewhere along here.  Mr. Bailey started walking simultaneous
23   with Ms. Beland.  She was walking faster.  What I saw was two
24   people coming at me.  It wasn't just Ms. Beland.  When they
25   got -- when they got just beyond arm's reach, like six feet from
26   me, that is when I reacted.  It was a thing that started in my
27   chest.  I just was like compressed.  And it was like, um, I was
28   looking at Mr. Bailey.  I stepped towards Ms. Beland.  I took

257

1    her glasses off with the Chuck-It. And then I turned and I
2    faced Mr. Bailey.

3        We took about -- he immediately turned to his left and I
4    went -- once Ms. Beland came here, I took three steps in this
5    direction. And that is when Mr. Bailey said to me I saw the
6    whole thing. You better get the hell out of here.

7        Immediately after he said that, I turned back to
8    Ms. Beland. The frames of her glasses were still on her face.
9    The lenses had landed on the ground. I would say 6, 6 to 7 feet
10   at the most. She had bent down and picked up her glasses as I
11   turned back in this direction towards her right here. And the
12   last thing I remember is that she said -- she said I am calling
13   the police. And she headed back in this direction here.

14       I proceeded over here, sat at these tables with my dog.
15   Mr. Bailey went back up here. And I thought Mr. Corbett was
16   here, but I never saw him come from any direction. But I saw
17   many people -- everybody in the park was congregated over here.
18   I waited at the tables for what I thought was ten minutes. It
19   could have been a shorter time. I looked over. I couldn't
20   figure out what they were doing. I had my phone in my jacket
21   pocket. I didn't think I had my phone on me. I proceeded from
22   this table to the gate.

23       When I got to the gate is when the 911 audio started. The
24   911 audio was not -- Mr. Corbett didn't make the call when I
25   struck the dog. It was ten minutes after I had waited here, ten
26   minutes after the incident when I was trying to go out the gate.
27   I walked to the gate. I put one hand on the gate. Julie Beland
28   slid down the ~~gate~~ and blocked the gate with her body.

                 Feng

                                       155

1      When we had our interaction, as soon as I talked with

2  police dispatch, I returned to where I was sitting and I waited

3  for the officers.  When I turned around, I saw that there was —

4  I know it was Mr. Bailey and I believe it was Mr. Corbett behind

5  me.

6      THE COURT:  So anything further, sir?

7      MR. CRAMER:  Yes.

8      THE COURT:  Sir, the witness stand, please.  If you need

9  some materials to help you, you can take those with you.  It is

10  appropriate that your testimony come from the witness stand,

11  sir.

12      MR. CRAMER:  I wanted to enter exhibits into evidence.

13  Should I go through cross-examination first and then enter

14  them?

15      THE COURT:  No.  If you have further testimony or evidence

16  you wish to present via your testimony, you need to do that now.

17  You need to do that from the witness stand, sir.

18      MR. CRAMER:  Okay.

19      THE COURT:  Madam Clerk, the drawing is Exhibit 22.

20      THE CLERK:  It will be Exhibit 24.

21      THE COURT:  Okay.  24.

22      (Exhibit No. 24 was marked for identification.)

23      MR. CRAMER:  I need those top two exhibits.  Just the top

24  two.

25      THE COURT:  Go ahead, Mr. Cramer.

26      MR. CRAMER:  Okay.  I would like to introduce into

27  evidence -- they are in that folder.  There is the three

28  pictures of the dogs.

                                                          259

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                              No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/


EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS



# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
# FOR THE COUNTY OF PLACER

--oOo--

THE PEOPLE FOR THE STATE OF CALIFORNIA, NO.
                                                    Plaintiff,

                                                          **DECLARATION IN SUPPORT**
                    - vs -                                **OF WARRANTLESS ARREST**

                                        Defendant(s).

*DAVID WESTON CRAMER*

I, the undersigned, say and declare:

I am employed by the *AUBURN Police DEPARTMENT* as a peace officer.

I reasonably believe that there is probable cause to arrest the above named individual(s) for violation(s) described on the attached Arrest Report. My belief is based upon statements and information contained within the Arrest Report, which is attached hereto and incorporated by reference as if set forth fully herein.

I hereby declare under penalty of perjury that I have read the above report and know the contents thereof, and that the same is true of my knowledge, except as to the matters therein stated upon information and belief, and as to those matters, I believe them to be true.

WHEREFORE, your declarant prays the court find probable cause for the arrest of said defendant(s), who may then be dealt with according to law.

Executed on _____*1-25-14*_____ at

*AUBURN*_____,

Placer County, California.

_____
                              Declarant

Distribution: White - Magistrate, Yellow - Arrest File, Pink - Officer

**SUPPLEMENT**
**CRIME:** 245(a)(1) PC
**STATUS:** CA
**DATE:** 1-24-14
**TIME:** 1318 hrs.

V-Beland, Juliette Leslie 8-1-60
M-Garlock, Mike S4 APD
S-Cramer, David Weston 8-31-57

Sergeant Garlock spoke with Beland earlier on the telephone and learned she
had self-admitted herself in the emergency room following the assault (refer to
supplement by SGT Garlock for further). Sergeant Garlock told me Beland was
willing to sign a medical release pertaining to her E.R. visit.

I drove to Beland's residence and she signed the medical release. While there
she told me "she never saw it coming." She said she recalled Cramer winding up
and hitting her with the Chuckit. She said "he broke the Chucker over my head."

Ofc. James Dalton #3

Approved:

**SUPPLEMENT**
**CRIME:**     245(a)(1) PC
**STATUS:**   CA
**DATE:**      1-25-14
**TIME:**      1200 hrs.

V-Beland, Juliette Leslie  8-1-60
CA-Cramer, David Weston  8-31-57

Cramer met up with me at the dog park at my request. I asked him to show me
where the confrontation occurred in the dog park between him and Beland. The
area was generally in the middle of the grass a little further north of the center. I
told him I understood Beland was reacting to him hitting her dog with his orange
Chuckit. He acknowledged and repeated he was only trying to get her dog away
from his.

He said Beland immediately started yelling at him from the bench she was sitting
at along the east grass edge and before he knew it she was up in his face yelling
for him to "get the fuck out of the dog park." Cramer said before he realized it he
had hit her with his Chuckit. He told me he knocked the lenses out of her
sunglasses and his Chuckit broke upon impacting her head. He then noticed the
man with a large shepherd approach him from the south side of the park. The
man told Cramer he saw what happened and recommended he leave the dog
park.

I asked Cramer how he was holding his Chuckit before he hit Beland with it. He
told me he was holding it along the shaft and thought he hit her with the handle
portion.

I advised Cramer he was under arrest for assault with a deadly weapon. I placed
him in handcuffs, double locked the cuffs, and placed him in the rear of my patrol
vehicle. He chose to leave his secure Toyota truck parked in the parking lot of
the park.

I transported Cramer to the Placer County Jail and turned him over to booking
staff.

Ofc. James Dalton  83

Approved:

DR# 14-023-02
CRIME: 245(a)(1) PC
STATUS: CA
DATE: 02-12-14
TIME: 1130

(CA) Cramer, David
          DOB: 08-31-57

(V) Beland, Julie
          DOB: 08-01-60

(A) Dalton, James Ofc.
          Auburn Police Department

SUPPLEMENT

On 01-23-14 at approximately 1026 hrs, I arrived at Ashford Park's dog park and assisted Ofc. James Dalton with investigating a battery to one of the park's patrons. I assisted the investigation by taking photographs and taking custody of evidence.

I photographed the chuck it device (Item # 1MG), which Cramer allegedly used to strike Beland, and I also photographed the chuck it in relation to the chuck it's broken handle.

Prior to leaving the dog park, I advised Cramer that I would need to take custody of his chuck it for evidence and I asked him if he would like a receipt. Cramer told me not to worry about it and he voluntarily handed me the chuck it.

I took the chuck it back to the station and locked it in a cabinet near my desk until I could fill out the necessary paperwork.

On 01-23-14 at approximately 1900 hrs, I was briefing the oncoming supervisor, Officer Chris Forman, about the day's events. Officer Forman picked up the chuck it and demonstrated how hard he perceived it would take to hit somebody to be classified as an assault with a deadly weapon. He struck the chuck it against the back of a padded chair located in the department's sergeant's office. The end of the chuck it broke, meaning the cup portion where a tennis ball could be placed.

On 01-24-14, I spoke by telephone with Julie Beland and I asked her how the handle on the chuck it broke and she said Cramer broke it using it on her. Beland also mentioned that Cramer struck her with the ball end of the chuck it. Beland also mentioned that when Cramer struck her, he knocked her prescription glasses off her head. In regard to being hit, Beland told me Cramer, "walloped the shit out of my head". Lastly, Beland told me that Cramer hit her like he had a bat in his hand".

On 01-25-14 at approximately 1350 hrs, I photographed Beland's injuries, which were now visible.(photos on CD, item # 2MG) She had bruising around her left eye and a bruise on the top, left side of her head. While I was at Beland's residence, she also handed me copies of some medical paperwork (item # 3MG), which she got from Kaiser after she was treated there on 01-23-14.

Beland also explained that her prescription glasses were damaged as a result of Cramer hitting her. Beland said her glasses now had bent frames, a scratch on one of the lenses, and both lenses no longer fit right in the frames. Beland said her glasses were worth five hundred dollars.

I burned the photographs to CD and booked the CD, the chuck it, and the medical records into evidence. (See attached property sheet)

I request that a copy of this report be sent to the Placer County District Attorney's Office.

Report By:                                                 Reviewed By:
M. GARLOCK                                                 MG  S-H
Michael Garlock, sergeant                                  02-12-14

24

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                           No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/

EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

F

- Dogs MUST be under voice control and be in sight of their handler
- Limit of three dogs allowed per dog handler
- YOU are responsible for your actions and those of your dog(s) and children
- Any dog(s) exhibiting aggression MUST be IMMEDIATELY REMOVED from the park
- Children under 15 years of age MUST be supervised by a responsible adult
- All dogs MUST display current license and be at least 6 months of age
- Dogs that are sick, in heat or having fleas or ticks are not permitted
- Consumption of alcohol and food, the use of glass containers and smoking are not allowed.
- Pond and dog equipment is for DOG PLAY ONLY.  People are not allowed in pond or on the dog equipment at any time
- All personal/dog items must be removed when leaving park or they will be discarded or disposed
- ARD may close any part of the Dog Park at any time for maintenance, repair and safety; said closure(s) may require sharing of either dog play area

***Park users and dog handlers assume ALL risks related to park use - Auburn Recreation and Park District and Ashley Memorial Dog Park Foundation are not responsible for injuries/losses.***

The Ashley Memorial Dog Park Foundation is financially responsible for waste bags and any/all improvements.  Your tax deductible cash donation will help maintain park and add improvements.  Federal Tax ID# 20-2166927   Contributions may be sent to:  Ashley Memorial Dog Park Foundation, 578 Lincoln Way, Auburn, CA 95603

Please report any unauthorized activity to the Auburn Recreation District at 530-885-8461 City of Auburn Police Department 530-823-4237; Emergencies call 9-1-1

**CITY OF AUBURN MUNICIPAL CODES:**

Dogs off leash outside of dog park fenced area 97.074

Littering including pet waste 97.010



or Click Here for the form

Search



David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                        No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/


EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

6

Superior Court No. 62-129468

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF PLACER

APPELLATE DEPARTMENT

---

THE PEOPLE OF THE STATE OF
CALIFORNIA,

                 Respondent,

v.

DAVID CRAMER ,

                 Appellant.

                     /

**FILED**
Superior Court of California
County of Placer

**MAR 25 2015**

Jake Chatters
Executive Officer & Clerk
By: R. Pellet, Deputy

---

APPELLANT'S OPENING BRIEF

Appeal from the Ruling of the Superior Court
of the State of California for the
County of Placer

Superior Court No. 62-129468

HONORABLE CHARLES WACHOB

---

Law Offices of
MARK A. BERG
1515 Lincoln Way
Auburn, CA 95603
T: (530) 823-7700

Lauren E. Otto; SBN 284866
Attorney for Appellant by
Appointment of the Presiding
Judge of the Superior Court
of Placer County

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF APPEALABILITY. . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . 2

ARGUMENT:

     I.    THE COURT ERRED BY FAILING TO GIVE JURY
         INSTRUCTION CALCRIM 3476: DEFENSE OF
         PROPERTY BECAUSE THE DEFENDANT REQUESTED
         THAT THE COURT GIVE THAT INSTRUCTION AND
         THERE IS SUBSTANTIAL EVIDENCE IN THE RECORD
         OF SUCH DEFENSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     II.   THE COURT COMMITTED ERROR WHEN IT
         ADMITTED THE BROKEN "CHUCK-IT" INTO
         EVIDENCE AND FAILED TO ISSUE A LIMITING
         INSTRUCTION TO THE JURY. . . . . . . . . . . . . . . . . . . 8

     III.  THE COURT ERRED BY EXCLUDING THE ACTUAL
         PAGES OF JULIE BELAND'S RESTRAINING ORFDER
         BECAUSE STATEMENTS IN THOSE DOCUMENTS
         WERE EXTRINSIC EVIDENCE OF A PRIOR
         INCONSISTENT STATEMENT AND THE INTERESTS
         OF JUSTICE REQUIRED THEIR ADMISSION. . . . . . . 10

     IV.  THE COURT ERRONEOUSLY EXCLUDED JULIE
         BELAND'S MEDICAL RECORDS BECAUSE THE TRIAL
         JUDGE RULED IN LIMINE THAT THEY WOULD BE
         ADMITTED IF TWO INJURIES WERE MENTIONED
         AND SUCH TESTIMONY DID ARISE AT TRIAL . . . . . 11

CONCLUSION. . . . . . . . . . . : . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

Page

Cal. Rules of Court, Rule 8.204(a)(2)(b). . . . . . . . . . . . . . . . . . . . . . . . . . . .1

PEOPLE V. COFFMAN (2004) 34 Cal. 4th 1, 103, n34 . . . . . . . . . . . . .6

PEOPLE V. TROMBETTA (1984) 467 U.S. 479, 485 . . . . . . . . . . . . . . 6

CRANE V. KENTUCKY (1986) 476 U.S. 683, 690 . . . . . . . . . . . . . . . .6

CALCRIM 3476 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 7, 8

CALCRIM 3476 Bench Notes . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

PEOPLE V. SALAS (2006) 37 Cal. 4th 967, 982-983 . . . . . . . . . . . 6, 7, 8

Cal. Evid. Code § 355 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9, 10

PEOPLE V. HERNANDEZ (2004) 33 Cal. 4th 1040, 1051 . . . . . . . . . 8, 9

PEOPLE V. JENNINGS (2000) 81 Cal. App. 1301, 1316. . . . . . . . . . . 8, 9

Cal. Evid Code § 770 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

1965 Law Revision Commission Comments on Cal. Evid. Code § 770. . .10

LAW OFFICES OF
## ·MARK A. BERG
COURTHOUSE OFFICE PLAZA
1515 LINCOLN WAY
AUBURN, CALIFORNIA 95603
(530) 823-7700

(SPACE BELOW FOR FILING STAMP ONLY)

**LAUREN E. OTTO**, State Bar No. 284866
Attorney for Appellant/Defendant: DAVID CRAMER

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF PLACER

## APPELLATE DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DAVID CRAMER,<br><br>      Defendant and Appellant. | Case No. 62-129468<br><br>**APPELLANT'S OPENING BRIEF** |

## STATEMENT OF APPEALABILITY

In accord with California Rules of Court, Rule 8.204(a)(2)(b), the within appeal is from a final judgment entered on November 20, 2014, disposing of all issues between the parties.

## STATEMENT OF THE CASE

This is an appeal following a jury trial held November 12th, 13th, and 14th, 2014, in which the defendant and Appellant was found guilty of violating Cal. Penal Code § 242. On November 20, 2014, Appellant was

1

placed on three years of informal probation, ordered to serve 4 months in

Placer County Jail with 90 days of that sentence suspended, the balance of

30 days to be served in custody. He was also ordered to pay a $150.00

restitution fund fine, a $30.00 critical needs assessment, and a $40.00

facilities assessment. Further terms and conditions of probation ordered

included surrendering any firearm, being subject to search and seizure,

complying with a protective order in which Julie Leslie Beland was the

protected party, and completing an anger management course. Required

notice of appeal was timely filed.

## STATEMENT OF FACTS

On January 23, 2014 at approximately 10:15 AM, Officer Dalton of

the Auburn Police Department was dispatched to Ashley Memorial Dog

Park for a report of a physical dispute. (RT: 67 & 68 lines 25-28 & 1-3)

Officer Dalton testified that he proceeded to the entrance of the dog park

and spoke to approximately 5 or 6 people including Appellant. (RT: 68

lines 10-17) Officer Dalton testified that he took statements from witnesses

Jaime Scannell, Michael Bailey, and Robert Corbett as well as Julie Beland,

the alleged victim in the case, and Appellant. (RT: 70 lines19-24) Each of

these people testified at trial.

Julie Beland testified that she was at the dog park for approximately

10-15 minutes when she saw Appellant enter the park with his dog and a

"Chuck-It" device used to throw balls for dogs. (RT: 190 lines 15-22) At

2

this point in time, Ms. Beland's dog began playing with Appellant's dog as

well as some other dogs who began running together and "packing on each

other." (RT: 190 lines 21-25) Appellant testified that as the dogs were

running, two of the dogs (Mr. Bailey's and Ms. Beland's) cornered his dog

behind a ~~fence~~ bench causing his dog to "bolt out from behind the ~~fence~~ bench with her

ears back and her tail between her legs." (RT: 255 lines 12-15) When the

play got too rough, Appellant testified that he called his dog and she ran to

him and "hit the deck." (RT: 255 & 256 lines 25-28 & 1-3) Appellant

testified that he witnessed Ms. Beland's dog take his dog by the neck

causing Appellant to take the Chuck-It and slap Ms. Beland's dog on the

butt. (RT: 257 lines 4-7)

It was at this point in time that Ms. Beland got up from where she

was sitting and began to approach defendant yelling obscenities. (RT: 257

lines 13-18) Ms. Beland testified that she was limping because she had just

gotten her leg out of a cast, but was not using a cane as she approached.

(RT: 193 lines 10-13) Appellant testified that Mr. Bailey also began to

approach him at this point in time. (RT: 257 lines 22-23) Appellant testified

that with the two people approaching aggressively, he got a "compressed"

feeling, and when they got about 6 feet from him, he took one step forward

and swiped at Ms. Beland's glasses with the Chuck-It. (RT: 257 & 258

lines 23-28 & 1) Ms. Beland described this action in her testimony as a

"whack in the side of the head." (RT: 193 line 23)

3

Later in the day, Ms. Beland went to the doctor and had her head examined. (RT: 218 lines 8-10) Officers had her sign a release for her medical documents. (RT: 218 & 219 lines 24-28 & 1-2) Officers also documented her injuries by taking photographs, some showing an injury to the side of her head and her eye while others showed an injury to the top of her scalp. (RT: 270 & 271 lines 21-28 & 1-16) Ms. Beland testified that she had a concussion and a closed-head injury. (RT: 218 lines 18-23)

In pre-trial proceedings, the court excluded the medical records; however, the court made an express finding that if multiple injuries were mentioned such as a head injury versus an eye injury, then Appellant would be able to introduce the medical records into evidence. (RT: 41 lines 21-28) During Officer Dalton's testimony, he specifically testified that witnesses saw only one strike, but that a photograph of Ms. Beland showed two injuries. (RT: 86 lines 11-19) Later, Officer Dalton spoke about the two injuries a second time. (RT: 94 lines 3-5) However, the court never allowed Appellant to enter the medical documents into evidence and definitively excluded them. (RT: 230 lines 5-12)

Also, outside the presence of the jury, Appellant requested that a copy of a civil restraining order be allowed into evidence for the purpose of impeaching Ms. Beland's credibility. (RT: 261 lines 26-28) Specifically, Appellant wanted to enter a statement on the restraining order that Ms. Beland wrote that she was "limping with a cane" at the time of the impact.

4

(RT: 265 lines 3-4) Ms. Beland testified at trial that she was not using a cane at the time of impact. (RT: 193 lines 10-13) The court declined to allow Appellant to enter the piece of paper with that statement on it and limited him to testifying about the statement instead. (RT: 265 lines 9-19)

Another piece of evidence that was at issue was the Chuck-It that was used during the incident. Officer Garlock testified that it was his responsibility to collect the Chuck-It to book it into evidence. (RT: 117 lines 6-14) The Chuck-It was originally broken into two pieces; however, it was entered into evidence broken into four pieces. (RT: 22 lines 26-28) Officer Garlock testified that the reason the Chuck-It was broken further was due to an officer handling the Chuck-It and whacking it on the back of a padded chair. (RT: 118 lines 6-9) Officer Garlock admitted that this is not standard police procedure and that he was in disbelief that such an action had occurred. (RT: 118 lines 10-16)

At the conclusion of trial, jury instructions were ruled upon. Appellant requested that Jury Instruction 3476 on defense of property as a defense to the crime of battery be given to the jury. (RT: 281 & 282 lines 27-28 & 1-2) Despite the fact that Appellant stated that defense of his dog was a part of his theory of the case (RT: 281 & 282 lines 27-28 & 1-2), the court declined to give the appropriate defense of property instruction. (RT: 282 lines 20-21)

5

## ARGUMENT

I.  **THE COURT ERRED BY FAILING TO GIVE JURY INSTRUCTION CALCRIM 3476: DEFENSE OF PROPERTY BECAUSE THE DEFENDANT REQUESTED THAT THE COURT GIVE THAT INSTRUCTION AND THERE IS SUBSTANTIAL EVIDENCE IN THE RECORD OF SUCH A DEFENSE.**

Jury instructions may be challenged on appeal if an instructional error affected the defendant's substantial rights. *People v. Coffman* (2004) 34 Cal. 4th 1, 103, n34. It has long been determined by the courts that it is a substantial right of the defendant to be given the opportunity to present a complete defense. *California v. Trombetta* (1984) 467 U.S. 479, 485; *Crane v. Kentucky* (1986) 476 U.S. 683, 690.

In the instant case, the court erred when it refused to instruct the jury on defense of property (CALCRIM 3476) because that decision precluded Appellant from being able to present a complete defense to the charge against him. According to the Bench Notes attached to CALCRIM 3476, "The court *must* instruct on a defense when the defendant requests it and there is substantial evidence supporting the defense." (emphasis added). The notes go on to further state that "substantial evidence means evidence of a defense, which, if believed, would be sufficient for a reasonable jury to find a reasonable doubt as to the defendant's guilt." CALCRIM 3476 bench notes, citing *People v. Salas* (2006) 37 Cal. 4th 967, 982-983.

6

First, it is uncontested that the defense indeed requested that
CALCRIM 3476 be read to the jury. Appellant stated that defense of his
dog was part of his theory of the case. (RT: 281 & 282 lines 27-28 & 1-22)
Therefore, the first part of the CALCRIM bench notes, that the defense
must request an instruction, is met. As such, the court has a duty to instruct
if there is substantial evidence supporting the defense.

There is definitive evidence in the record that Appellant repeatedly
testified to the fact that he was in fear of his dog being harmed. Appellant
testified that he believed play between his dog and the other dogs became
too rough. (RT: 255 lines 21-26) Appellant testified that as his dog came to
him, she "hit the deck" and he took a knee over her to protect her. (RT: 256
lines 2-4). Appellant testified that he took a protective stance over her a
second time. (RT: 256 line 26) Appellant repeatedly testified that Ms.
Beland's dog had his dog by the neck. (RT: 257 lines 4-5 & 12)

Ms. Beland was approaching Appellant as he was over his dog
yelling with her arm in the air. (RT: 257 lines 15-18) Mr. Bailey was
walking simultaneously with Ms. Beland and was also approaching
Appellant and his dog. (RT: 257 lines 22-23) Appellant perceived these
approaches as two people coming at him. (RT: 257 lines 23-24) During the
approaches, he was still on the ground over his dog. (RT: 257 line 6)

All of the above facts and testimony provide evidence that "would
be sufficient for a reasonable jury to find a reasonable doubt as to the

7

defendant's guilt." CALCRIM 3476 bench notes, citing *People v. Salas*
(2006) 37 Cal. 4th 967, 982-983. Therefore, the two prongs of the
CALCRIM bench notes for when a court *must* instruct the jury are met: 1)
the defendant requested an instruction, and 2) there was substantial
evidence in the record supporting a defense of property defense. As such,
the court was under a duty to instruct on CALCRIM 3476 and failed to do
so.

Since this instruction was never given to the jury, the defendant's
right to present a complete defense was negatively affected. Had the jury
been given this instruction, there is a real possibility they could have
determined that Appellant's actions were in accordance with defending his
dog and returned a not guilty verdict. Thus, this error demands reversal of
the conviction.

## II.  THE COURT COMMITTED ERROR WHEN IT ADMITTED THE BROKEN "CHUCK-IT" INTO EVIDENCE AND FAILED TO ISSUE A LIMITING INSTRUCTION TO THE JURY.

*Altered*

Pursuant to Cal. Evid. Code § 355, "When evidence is admissible as
to one party or for one purpose and is inadmissible as to another party or
for another purpose, the court upon request *shall* restrict the evidence to its
proper scope and instruct the jury accordingly." Cal. Evid. Code § 355
(emphasis added). The court is not under a sua sponte duty to give a
limiting instruction; however, limiting instructions should be given *upon*

8

*request. People v. Hernandez* (2004) 33 Cal. 4th 1040, 1051; *People v. Jennings* (2000) 81 Cal. App. 1301, 1316.

In the instant case, Appellant moved for the Chuck-It to be excluded due to the fact that it had been altered and broken more times than what happened in the original event. (RT: 19 lines 13-17) After hearing what happened to the Chuck-It and confirming that it was due to police mishandling, the court decided to treat Appellant's request as a motion in limine. (RT: 23 lines 8-10) The court ruled that in order to correct this error, it would issue a limiting instruction to instruct the jury that "at that point in time that they are not to consider the fact that it is in four pieces as any evidence as to the guilt" of Appellant. (RT: 23 lines 19-23)

Through the testimony of Sergeant Garlock, the Chuck-It was entered into evidence. (RT: 117 lines 6-20) At that point in time, no limiting instruction was given. (RT: 117 & 118 lines 6-28 & 1-26) In fact, throughout the entirety of trial, there was never any limiting instruction given. (RT: 1-294) Appellant's charge in the case was a violation of Cal. Penal Code § 242, a battery. Whether the Chuck-It was used as a weapon as well as the level of force used were extremely important facts for the jury to determine, especially since Appellant was alleging self-defense and defense of property.

The jury was not properly instructed as to how to consider the weapon and the breaks in the Chuck-It in a case where level of force used

9

was a main issue based upon the defenses Appellant was raising. Therefore,

the court failed to adequately instruct the jury about altered evidence even

when Appellant requested that the court so instruct. As such, the court was

in violation of Cal. Evid. Code § 355 requiring that a limiting instruction be

given. This error demands reversal of conviction.

### III.   THE COURT ERRED BY EXCLUDING THE ACTUAL PAGES OF JULIE BELAND'S RESTRAINING ORDER BECAUSE STATEMENTS IN THOSE DOCUMENTS WERE EXTRINSIC EVIDENCE OF A PRIOR INCONSISTENT STATEMENT AND THE INTERESTS OF JUSTICE REQUIRED THEIR ADMISSION.

Cal. Evid. Code § 770 reads as follows:

> "*Unless the interests of justice otherwise require*, extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless: (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or (b) The witness has not been excused from giving further testimony in the action." Cal. Evid. Code § 770 (emphasis added).

The 1965 Law Revision Commission Comments on Cal. Evid. Code

§ 770 state, "Where the interests of justice require it, the court may permit

extrinsic evidence of an inconsistent statement to be admitted even though

the witness has been excused and has had no opportunity to explain or deny

the statement."

In this case, Julie Beland was excused at the time Appellant

attempted to enter her inconsistent statement on her restraining order and

had not had the opportunity to explain or deny that statement. However, as

the victim in the case, her statements about how the event occurred are extremely important evidence. The complaining witness's credibility is a crucial issue for the jury in determining what actually transpired. Ms. Beland wrote in a signed request for a restraining order that she was "limping with a cane" at the time of the incident. (RT: 265 lines 3-4) She then testified at trial that she was not walking with a cane. (RT: 193 lines 10-13)

Though the court allowed Appellant to testify about this statement during his testimony, the court excluded the actual pages of the restraining order with the inconsistent statement on them. (RT: 265 lines 9-19) The jury was not provided this crucial evidence of Ms. Beland's inconsistencies which directly affected her credibility. Pursuant to Cal. Evid. Code § 770, the interests of justice required admission of Ms. Beland's inconsistent statements. As such, the error of not allowing this evidence to come in at trial requires reversal of conviction.

## IV.  THE COURT ERRONEOUSLY EXCLUDED JULIE BELAND'S MEDICAL RECORDS BECAUSE THE TRIAL JUDGE RULED IN LIMINE THAT THEY WOULD BE ADMITTED IF TWO INJURIES WERE MENTIONED AND SUCH TESTIMONY DID ARISE AT TRIAL.

As mentioned above in the statement of facts, the trial judge ruled that if there was any mention of two injuries such as an eye injury versus a head injury, Ms. Beland's medical records would be admitted into

11

evidence. (RT: 41 lines 21-28) Two injuries were mentioned multiple times at trial during Officer Dalton's testimony. (RT: 86 & 94 lines 11-19 & 3-5) When Appellant attempted to enter the medical records into evidence, they were instead excluded. (RT: 230 lines 5-12) Such a ruling by the court was directly inconsistent with its previous ruling, and the medical records should have been admitted.

Admission of the medical records would have again shown inconsistencies in Ms. Beland's testimony. These documents reflect directly on the credibility of the complaining witness, Ms. Beland. As such, it was error for the court to exclude the records and such error demands reversal of Appellant's conviction.

## CONCLUSION

In the instant case, Appellant was denied the right to a fair trial. The court's failure to give the jury instruction on defense of property precluded Appellant from presenting a complete defense. This error alone is serious enough to require a reversal of Appellant's conviction. Coupled with the erroneous admission of the Chuck-It without appropriate instruction to the jury, Appellant did not receive a fair trial.

Additionally, a fair trial requires that Appellant have the opportunity to present evidence challenging the credibility of the complaining witness and victim in the case, Ms. Beland. As the court precluded admission of the

restraining order as well as the medical documents to impeach Ms.

Beland's credibility, Appellant was again denied a fair trial.

Each of the four errors alone is enough to require a reversal;

however, in the aggregate, the court's errors definitively demand reversal of

Appellant's conviction. It is respectfully submitted that, for the reasons

stated, the judgment should be reversed.

Dated: March 24, 2015

Respectfully submitted,

LAUREN E. OTTO
Attorney for Appellant

## CERTIFICATE BY APPELLATE COUNSEL

I, Lauren E. Otto, attorney for Appellant, Mr. David Cramer, hereby

declare under penalty of perjury, that the number of words contained in this

brief, as stated on the word count of the computer program used to prepare

the brief is 2,976 words.

DATED: March 24, 2015

LAUREN E. OTTO
Attorney for Appellant

## PROOF OF SERVICE

I declare that:

I am a citizen of the United States and employed in the County of Placer, State of California. I am over the age of 18 years, and not a party to or interested in the within entitled cause. On this 24th day of March, 2015, I served the following documents:

### APPELLANT'S OPENING BRIEF

Re:        **People v. David Cramer**
Case No.:  **62-129468**

____    By placing a true copy thereof enclosed in a sealed envelope with postage prepaid, in the United States Post Office mail at Auburn, CA, addressed as set forth below

____    By personally delivering a true copy thereof to the person at the address as set forth below.

_X_     Via Facsimile

Office of the District Attorney
County of Placer
(916) 543-2550

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 24th day of March, 2015, at Auburn, California.

Crystal Collins

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF PLACER

APPELLATE DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) Case No. 62—129468 |
| | ) **RESPONDENT'S REPLY BRIEF** |
| Plaintiff/Respondent, | ) |
| vs. | ) |
| DAVID CRAMER, | ) |
| Defendant/Appellant. | ) |

Appeal from the Ruling of the Superior Court, County of Placer

HONORABLE CHARLES WACHOB

R. SCOTT OWENS
Placer County District Attorney
State Bar No. 146406
David Bass
Deputy District Attorney
State Bar No. 296380
10810 Justice Center Drive, Suite 240
Roseville, CA 95678
Tel: (916) 543-8000

TABLE OF AUTHORITIES

CASES

*People v. Andersen* (1994) 26 Cal.App.4th 1241 ................................. 9, 11

*People v. Barnett* (1998) 17 Cal.4th 1044 .................................................. 5

*People v. Carpenter* (1999) 21 Cal.4th 1016 ...................................... 14, 15

*In re Christian S.* (1994) 7 Cal.4th 768, 783 .......................................... 5

*People v. Edwards* (1991) 54 Cal.3d 787 .............................................. 13

*People v. Hill* (2005) 131 Cal.App.4th 1089 ............................................ 6

*People v. Guiuan* (1998) 18 Cal.4th 558 569-570 ............................... 5, 10

*People v. Salas* (2006) 37 Cal.4th 967 .................................................... 6

*People v. Sanders* (1995) 11 Cal. 4th 475 ............................................. 13

*People v. Ramos* (2008) 163 Cal.App.4th 1082 .................................. 9, 11

*People v. Rodrigues* (1994) 8 Cal.4th 1060 ........................................... 13

STATUTES

California Evidence Code 352 ......................................................... 13-15

On November 14, 2014, the jury convicted Appellant on the sole count of simple battery. On November 20, 2014, Appellant was sentenced to 30 days in custody with an additional 90 days stayed and 3 years informal probation, among other terms and conditions.

A notice of appeal was timely filed on appellant's behalf by the conflict firm, the Law Offices of Mark A. Berg.

### STATEMENT OF FACTS

At approximately 10:00 a.m., on Thursday, January 23, 2014, Julie Beland was at the Ashley Dog Park in Auburn with her dog, "Piper." The park is flat, with a kidney shaped path that runs along the gate of the leash-free park. As David Cramer (Appellant) entered the park with his Australian Sheep Dog, some of the other dogs greeted his dog with the customary, predictable greeting of sniffing. (Reporter's Transcript 165.) Also in the park were a number of dog owners, including witnesses Robert Corbett, Jamie Scanel, and Michael Bailey.

Appellant went to an open area of the park with a Chuck-it in hand. The Chuck-it is a plastic ball-thrower with a thick, palm-fitting handle. At some point, two dogs joined with Appellant's dog to play. It was the opinion of witnesses that day that there was no aggression between the dog's, just ordinary play. (RT 141 [Witness Robert Corbett]; 177 [Witness Jamie Scanel];

2

that piece was put to the handle piece discovered by Mr. Bailey, it was a fit. (RT 75-78, 753.)

## The Trial

### 1. Prosecution Evidence

The prosecution called six witnesses: two officers, three percipient witnesses, and the victim, Julie Beland. Admitted into evidence were photos of injuries sustained by Ms. Julie Beland and the Chuck-It, as well as transcript from the 9-1-1 call.

### 2. Defense Evidence

Appellant called Judy Emmert in addition to testifying himself. Much of the evidence Appellant tried to enter was excluded. Among the items excluded during trial:

- A pipe wrench with a tennis ball between the vice. (RT 233.)
- Fly swatters bound together with tape. (RT 234.)
- Army men to be used as models of the people at the park. (RT 240.)
- Appellant's citizen complaint attached to an unrelated piece of evidence. (RT 261.)

The trial was interrupted several times for side bars and admonishments to the jury because of Appellant's improper questioning or editorial comments.

4

"Instructions only need be given where the 'evidence [is] substantial enough to merit consideration.'" (*People v. Hill* (2005) 131 Cal.App.4th 1089, 1101.) Substantial evidence means evidence of a defense, which, if believed, would be sufficient for a reasonable jury to find a reasonable doubt as to the defendant's guilt. (*People v. Salas* (2006) 37 Cal.4th 967, 982–983.)

Reading the reporter's transcript, in context, no evidence to support a defense-of-property instruction can be found. While testifying, Appellant stated the reason he hit Ms. Beland's dog, Piper, was to get the dog away from his dog, Pepper. (RT 257:4-12.) He succeeded in this. Ms. Beland's dog ran back to her after yelping, thereby catching the attention of everyone at the park. But nowhere does Appellant testify that, when Ms. Beland approached Appellant, he feared for his dog's safety or felt the dog was in imminent harm. The actual, full narrative testimony of Appellant on this part of the incident:

Mr. Cramer: "Bailey didn't take control of his dog. The last I saw of his dog, it kind of took off in this direction. I remember seeing Ms. Beland's dog duck in behind her after she passed somewhere along here. Mr. Bailey started walking simultaneous with Ms. Beland. She was walking faster. What I saw was two people coming at me. It wasn't just Ms. Beland. When they got – when they got just

6

bone of my case for self-defense. Not one of those issues are [sic] entered in your police report." (RT 95-96.) Here, in front of the jury, Appellant exclaims what his case is really about: self-defense, not defense of property.

As to Defendant stating part of his defense was defense of property, (quoted by Appellant on page 7 of his brief, referencing the reporter's transcript at 281 and 282) the statement was not evidence – it was part of **a conference on jury instructions outside of the presence of the jury**.

Likewise, exploring the discussion with court and counsel about giving the defense of property instruction is helpful. When asked how there is any proof of whether there is a connection in the facts to warrant a defense of property instruction, the following colloquy ensued:

Mr. Cramer:     "Her dog had my dog by the neck."

The Court:      "I appreciate that. Where do we find the causation from Ms. Beland to her dog to your dog?"

Mr. Cramer:     "Instead of taking her dog she chose to confront me."

(RT 282:10-14.) The "she-chose-to-confront-me" part of the case is all that was brought to the jury through testimony, and it was the reasoning given by Appellant. (RT 282.) So the court decided not to give the defense of property instruction. Appellant objected, stating "If you don't see my dog as my family, you have to see it as my property." Perhaps, but irrelevant as legal

8

(See RT 73, 95 [Officer Dalton under cross examination answering in the negative Appellant's version of events]; 146:16-17 [Witness Robert Corbett under cross examination stating he would not have been scared by Ms. Beland under the circumstances]; 161 [Witness Michael Bailey under cross examination denying Ms. Beland was trying to intimidate him].)   Three witnesses were called by the People that saw some or all of what happened, not including the victim. Given the testimony, the jury determined that, beyond a reasonable doubt, defendant was not justified in using force to defend himself. Appellant never explains how the jury could have felt differently about the property instruction, given the lack of information they had regarding what threat he perceived to his dog, as opposed to himself. It is the Appellant's job to establish prejudice and he has not done so.

## II. A limiting instruction on how the Jury should view the "Chuck-It" was unnecessary because testimony elicited by both Appellant and the People gave the jury a clear picture of how the evidence came to be broken in two separate places.

Again, against a claim of instructional error, the appellate court reviews a trial court's instruction under the de novo standard of review. (*People v. Guiuan* (1998) 18 Cal.4th 558 569-570.) "Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to

10

pieces were displayed to the jury. (RT 117-118.) As Officer Garlock stated in response to a question from Appellant about why he even put these facts into a report: "I did because this piece of evidence, when it came into my possession, was only broken at the handle level. And if I was to come into court with two extra broken pieces, someone is going to ask me how did that happen, and I have to be able to explain how that happened, so I did." (RT 118.)   The jury can understand this through witnesses better than any instruction.

Appellant overstates his case that the jury, given the amount of testimony they heard regarding the break, could not have come to the decision they did if only Judge St. Evans would have told them that it broke in two and not four pieces. The jury was both told and shown that the Chuck-It broke on Ms. Beland's face — once. They were then told it was also broken — once — by an Auburn Police Officer. It is the Appellant's job to establish prejudice and he has not done so. In other words, Appellant has not and cannot shown that a better result would have occurred had the instruction been given.

Appellant's stated purpose for introducing the evidence: she committed perjury and that she should be sent to jail. (RT 63:15-16.) How? Because, Appellant contends, she was not using the cane at the *exact* time that Appellant hit her. This is true. Ms. Beland walked into the dog park that day with a knee brace and cane, and had been using the cane at *approximately* the time of the assault.

To Appellant this is perjury; to everyone else, this is the imprecise nature of the English language. Appellant was within his rights to cross-examine Ms. Beland on this minutia. Most defense attorneys would have seen this line of questioning as a non-starter because she clearly meant a general approximation in the statement. Decent attorneys recognize that everything that glitters is not gold, and this little nugget was much ado about nothing. Be that as it may, this was a pro per trial, and now as then, Appellant conflates what is relevant in the trial with what is relevant to him.

Stated quite simply by California appellate courts, "The court may prevent criminal trials from degenerating into nitpicking wars of attrition or collateral credibility issues." (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1052.) This is precisely what the trial court did in this case.

14

1052.) Thus, the court stated, "It is the court's conclusion, the court's analysis under Evidence Code Section 352 that to go into the medical records could lead to misleading the jury, would be an undue consumption of time, therefore I restricted the examination on that issue." (RT 230)

The court did not abuse its discretion in excluding the records. Likewise, the court did not abuse its discretion in excluding the civil restraining order.

## CONCLUSION

The People proved beyond a reasonable doubt that Appellant's actions were not in self-defense. The judgment should be affirmed.

DATED: April 9, 2015

DAVID BASS

Attorney for the People

16

## PROOF OF SERVICE

**STATE OF CALIFORNIA**          )
                                 )  ss.
**COUNTY OF PLACER**             )

I, the undersigned, declare:

1.   That I am a citizen of the United States.
2.   That I am over 18 years of age.
3.   That I am a resident of Placer County,California.
4.   That I am not a party to the within action.
5.   That my business address is Placer County
District Attorney's Office, 10810 Justice Center Drive,
Suite 240, Roseville, CA  95678-6231
6.   That I am readily familiar with the business
practices of the County of Placer for collection and
processing of correspondence for mailing with the United
States Postal Service on the same date of placement for
collection.
7.   That on this date I served a copy of the within

RESPONDENT'S REPLY BRIEF

☒   by placing a true copy thereof in a sealed envelope,
and placing it for collection and mailing following
ordinary business practices and addressed as follows:

☐   transmitting said document(s) by facsimile to the
number(s) set forth below:

☐   personally served said document(s) to the person(s) at
the address(es) set forth below:

MARK ALAN BERG
1515 Lincoln Way
Auburn, CA 95603

Executed under penalty of perjury this 14th day
of April, 2015, at Roseville, Placer County, California.

(CCP 1013A, 2015.5)

_____
Debbie Ross,
LEGAL SECRETARY

1

Superior Court No. 62-129468

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF PLACER

APPELLATE DEPARTMENT

**FILED**
Superior Court of California
County of Placer

**MAY 28 2015**

Jake Chatters
Executive Officer & Clerk
By: R. Pellet, Deputy

THE PEOPLE OF THE STATE OF
CALIFORNIA,

        Respondent,

v.

DAVID CRAMER,

        Appellant.

             /

APPELLANT'S REPLY BRIEF

Appeal from the Ruling of the Superior Court
of the State of California for the
County of Placer

Superior Court No. 62-129468

HONORABLE CHARLES WACHOB

Law Offices of
MARK A. BERG
1515 Lincoln Way
Auburn, CA 95603
T: (530) 823-7700

Lauren E. Otto; SBN 284866
Attorney for Appellant by
Appointment of the Presiding
Judge of the Superior Court
of Placer County

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

ARGUMENT      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

   I.  APPELLANT REQUESTED THAT A DFENSE OF PROPERTY
       INSTRUCTION BE GIVEN AND THERE WAS SUBSTANTIAL
       EVIDENCE IN THE RECORD TO SUPPORT SUCH A DEFENSE;
       THEREFORE, THE COURT COMMITTED ERROR WHEN IT
       REFUSED TO GIVE SUCH AN INSTRUCTION. . . . . . . . . . . . . . .1

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

i

## TABLE OF AUTHORITIES

IN RE CHRISTIAN S. (1994) 7 Cal. 4th 768, 783. . . . . . . . . . . . . . . . . . . . . . . . . . 2

PEOPLE V. ARIS (1989) 215 Cal. App. 3d 1178, 1192 . . . . . . . . . . . . . . . . . . . . .2

CALCRIM 3476 Bench Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 4

PEOPLE V. SALAS (2006) 37 Cal. 4th 967, 982-983 . . . . . . . . . . . . . . . . . . . . . .2

CALIFORNIA V. TROMBETTA (1984) 467 U.S. 479, 485  . . . . . . . . . . . . . 4, 5

CRANE V. KENTUCKY (1986) 476 U.S. 683, 609. . . . . . . . . . . . . . . . . . . . . . . .5

LAW OFFICES OF
STAMP ONLY)
**MARK A. BERG**
COURTHOUSE OFFICE PLAZA
1515 LINCOLN WAY
AUBURN, CALIFORNIA 95603
(530) 823-7700

(SPACE BELOW FOR FILING

**LAUREN E. OTTO,** State Bar No. 284866
Attorney for Defendant/Appellant: DAVID CRAMER

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF PLACER

### APPELLATE DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF  CALIFORNIA, | Case No. 62-129468 |
| Plaintiff/Respondent, | **APPELLANT'S REPLY BRIEF** |
| v. | |
| DAVID CRAMER | |
| Defendant/Appellant. | |

## ARGUMENT

**I.    APPELLANT REQUESTED THAT A DEFENSE OF PROPERTY JURY INSTRUCTION BE GIVEN AND THERE WAS SUBSTANTIAL EVIDENCE IN THE RECORD TO SUPPORT SUCH A DEFENSE; THEREFORE, THE COURT COMMITTED ERROR WHEN IT REFUSED TO GIVE SUCH AN INSTRUCTION.**

Respondent correctly points out that "[A] trial court need give a

requested instruction concerning a defense only if there is substantial

1

evidence to support the defense." *In re Christian S.* (1994) 7 Cal. 4th 768, 783 citing *People v. Aris* (1989) 215 Cal. App. 3d 1178, 1192. When both a request for the instruction and substantial evidence to support the defense exist, then the court *must* give such an instruction. CALCRIM 3476 Bench Notes. There is no doubt that Appellant stated that defense of his dog as his property was part of his defense and requested that CALCRIM 3476 be read to the jury. (RT: 281 & 282 lines 27-28 & 1-22) Therefore, the determinative factor is whether there was substantial evidence in the record to support such a defense.

While Respondent does apply the correct standard, he refers to the evidence brought out at trial as nonexistent. (Respondent's Brief pg. 9) He repeatedly overlooks significant evidence which, "if believed, would be sufficient for a reasonable jury to find a reasonable doubt as to the defendant's guilt." CALCRIM 3476 bench notes, citing *People v. Salas* (2006) 37 Cal. 4th 967, 982-983.

The evidence which came out at trial to support a defense of property theory is as follows: Two larger dogs immediately started running with Appellant's dog. (RT: 254 lines 24-26) One of the larger dogs, a German Shepherd, was very dominant toward Appellant's dog. (RT: 254 & 255 lines 28 & 1) The two dogs cornered Appellant's dog behind a fence. Bench (RT: 255 line 12) Appellant's dog responded by bolting out from behind the fence with her ears back and her tail between her legs, running away

2

from the other dogs. (RT: 255 lines 13-16) The larger German Shepherd was biting Appellant's dog on the neck, top of the head, and back while the smaller dog, belonging to Ms. Beland, was nipping at her heels and her haunches, (RT: 255 lines 17-20) preventing her from getting away. Appellant's dog ran to him and "hit the deck" as Appellant positioned himself in a protective stance over his dog. (RT: 256 lines 2-4)

As Appellant began to let his dog back up, Mr. Bailey's dog immediately headed toward Appellant's dog again. (RT: 256 lines 16-21) As Appellant called his dog again, she dove down to the ground to get away from Mr. Bailey's dog that was now right in Appellant's face. (RT: 256 lines 24-27) Ms. Beland's dog then came in behind Appellant and took Appellant's dog by the neck. (RT: 257 lines 4-5) Appellant then slapped Ms. Beland's dog on the butt to keep it from biting his dog. (RT: 257 lines 5-7) It was at this point that both Ms. Beland and Mr. Bailey began approaching Appellant and his dog. (RT: 257 lines 13-24) Mr. Bailey did not take control of his dog (RT: 257 line 19) who had previously bitten Appellant's dog. The threat to Appellant's dog had not passed.

Respondent is correct that Appellant later requested the defense of property instruction from the court on the basis that "instead of taking control of [Ms. Beland's] dog, she chose to confront me." (RT: 282 lines 13-14) However, Respondent misinterprets this piece of information. Ms. Beland's dog had grabbed Appellant's dog by the neck as had Mr. Bailey's.

(RT: 257 line12) Both dogs were not being controlled by their owners. (RT: 257 lines 19-20) Ms. Beland and Mr. Bailey were approaching Appellant *and his dog* in an angry manner yelling obscenities. (RT: 257 lines 13-22) Appellant introduced pictures of his dog's injuries which included puncture wounds to the ears and neck. (RT: 274 & 275 lines 20-28 & 1-7) All of this evidence taken together with how quickly the scenario unfolded provides more than substantial evidence that a jury could determine that Appellant's actions were in accord with defense of his dog as his property. Therefore, the court was under a duty that it *must* instruct the jury as required by the CALCRIM 3476 Bench Notes.

Respondent next makes several attempts to argue that Appellant's decision to make a case for self-defense somehow precluded his ability to raise defense of property as an additional defense. There is nothing that precludes a defendant from raising multiple defenses during a trial. The standard, instead, it whether an instruction was requested and whether there was substantial evidence supporting that defense. CALCRIM 3476 Bench Notes.

Here, all of the above evidence demonstrates that a specific instruction for defense of property was requested, and Appellant put forth substantial evidence supporting such a defense. Therefore, the court committed error by denying Appellant the opportunity to present a complete defense, and the judgment should be reversed. *California v.*

4

*Trombetta* (1984) 467 U.S. 479,485; *Crane v. Kentucky* (1986) 476 U.S. 683, 609.

## CONCLUSION

It is respectfully submitted that, for the reasons stated, the judgment should be reversed.

Dated: __May 28, 2015__                    Respectfully submitted,


LAUREN E. OTTO
Attorney for Defendant/Appellant

5

## CERTIFICATE BY APPELLATE COUNSEL

I, Lauren E. Otto, attorney for Appellant, Mr. David Cramer, hereby declare under

penalty of perjury, that the number of words contained in this brief, as stated on the word

count of the computer program used to prepare the brief is 928 words.

DATED: May 28, 2015

LAUREN E. OTTO
Attorney for Appellant

# PROOF OF SERVICE

I declare that:

I am a citizen of the United States and employed in the County of Placer, State of California. I am over the age of 18 years, and not a party to or interested in the within entitled cause. On this 28th day of May, 2015, I served the following documents:

### APPELLANT'S REPLY BRIEF

     **Re:**       **David Cramer**
     **Case No.:**  **62-129468**

____    By placing a true copy thereof enclosed in a sealed envelope with postage prepaid, in the United States Post Office mail at Auburn, CA, addressed as set forth below

____    By personally delivering a true copy thereof to the person at the address as set forth below.

_X_    Via Facsimile

     Office of the District Attorney
     County of Placer
     (916) 543-2550

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of May, 2015, at Auburn, California.

                                        *Crystal Collins*
                                        Crystal Collins

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                        No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/

EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

H-1

1

2

3

4

5

6

7    SUPERIOR COURT OF THE STATE OF CALIFORNIA

8    IN AND FOR THE COUNTY OF PLACER

9    APPELLATE DIVISION

10

11   PEOPLE OF THE STATE OF            Case No.: 62-129468
     CALIFORNIA,
12
              Plaintiff and Respondent,   Opinion
13
         vs.
14
     DAVID WESTON CRAMER,
15
              Defendant and Appellant.
16

17

18       Appellant David Cramer appeals the judgment entered on November

19   20, 2014 after a jury verdict finding him guilty of simple battery in violation

20   of Penal Code section 242.

21

22                    I.  Factual and Procedural Background

23       A morning at the dog park turned into a physical assault leading to the

24   criminal charge in this case.  On January 23, 2014, appellant took his

25   Australian Shepherd to the Ashley Memorial Dog Park in Auburn to play.  He

26   //

27   //

28

- 1 -

FILED
Superior Court of California
County of Placer
JUL 22 2015
Jake Chatters
Executive Officer & Clerk
By: M. Taylor, Deputy

1  brought a "Chuckit!,"[1] an elongated plastic device commonly used by dog-
2  owners to throw balls for dogs to fetch. In the course of playing with his
3  dog, appellant's dog interacted with other dogs at the park. According to
4  appellant's version of events, the play between the dogs became aggressive
5  and a German Shepherd began biting at his dog. Juliette Beland, another
6  dog owner at the park, was sitting in a chair at the park and saw appellant
7  use his Chuckit to strike her German Shepherd on its side. Ms. Beland's
8  perception was that the dogs were simply playing, in an acceptable non-
9  aggressive manner. Ms. Beland got up from her chair and began to walk
10  toward appellant. Ms. Beland had recently had a cast removed and had
11  been using a cane, but limped toward appellant without the use of her cane.
12  She confronted appellant, asking him what he was doing and registering her
13  upset that appellant had struck her dog. She voiced audible expletives in
14  doing so. As she approached, appellant walked toward her, telling her that
15  her German Shepherd had been aggressive. Ms. Beland disagreed, telling
16  him that the dogs simply had  been playing. Appellant testified that another
17  dog owner, Michael Bailey, was also walking toward him. According to
18  appellant, when Mr. Bailey and Ms. Beland got just beyond his arm's reach,
19  approximately six feet away, appellant reacted. (RT 257.) He stepped
20  toward Ms. Beland and struck her in the side of her head with his Chuckit,
21  knocking off her sunglasses. The event was witnessed by others at the
22  park, including Jaime Scannell, Michael Bailey and Robert Corbett, each of
23  whom later testified at trial.

24      The Auburn police were called to the scene and investigated.
25  Appellant admitted he had swung the Chuckit at the victim, striking her in
26  the head and breaking the Chuckit. The officers retrieved the Chuckit at the

27  
28  [1] "Chuckit!" is the registered trademark name for the device. We will refer to it here simply as "Chuckit," consistent with the record.

- 2 -

1  scene, which had been broken in two pieces.  At the police station the next
2  day, a supervising officer mishandled the Chuckit and broke it further.

3      A misdemeanor complaint was filed on April 1, 2014 charging appellant
4  with a single count of simple battery in violation of Penal Code sections 242,
5  243(a).  The court granted appellant's *Faretta* request on September 22,
6  2014.  (*Faretta v. California (1975) 422 U.S. 806.*) Appellant represented
7  himself at trial.  Appellant was found guilty by the jury.

8                     II. Appellant's Contentions

9      Appellant raises four contentions on appeal: (1) the trial court erred
10  when it refused to give the CALCRIM 3476 jury instruction regarding defense
11  of property; (2) the trial court erred when it failed to give a limiting
12  instruction regarding the broken Chuckit; (3) the trial court erred when it
13  excluded portions of the victim's restraining order; and (4) the trial court
14  erred when it excluded portions of the victim's medical records.  We find
15  none of these contentions have merit and shall affirm.

16                     III.    Discussion

17  A. Defense Of Property Jury Instruction

18      Appellant contends the trial court erred by failing to instruct the jury
19  that an owner of personal property may use reasonable force to protect the
20  property from imminent harm, as more fully set forth in CALCRIM 3476. As
21  relevant to this case, the instruction provides:

22  "The owner of personal property may use reasonable force
     to protect that property from imminent harm.  Reasonable
23  force means the amount of force that a reasonable person in
     the same situation would believe is necessary to protect the
24  property from imminent harm.  When deciding whether the
     defendant used reasonable force, consider all of the
25  circumstances as they were known to and appeared to the
     defendant and consider what a reasonable person in a similar
26  situation with similar knowledge would have believed.  If the
     defendant's beliefs were reasonable, the danger does not
27  need to have actually existed. The People have the burden
28

                            - 3 -

1
2
3

of proving beyond a reasonable doubt that the defendant
used more force than was reasonable to protect property
from imminent harm.  If the People have not met this burden,
you must find the defendant not guilty of battery."

4

We apply de novo review to errors in jury instructions since they

5

involve questions of law. (*People v. Guiuan (1998) 18 Cal.4th 558, 569;*

6

*People v. Jandres (2014) 226 Cal.App.4th 340, 358.*)  When properly

7

requested by the defendant, he or she has the right to an instruction

8

directing the jury's attention to evidence "which a reasonable doubt of his

9

guilt could be inferred". (*People v. Jeffers (1996) 41 Cal.App.4th 917, 924-*

10

*925; People v. Larson (2012) 205 Cal.App.4th 810, 823.*)  The trial court has

11

a duty not only to instruct a jury on the general principles of law but to

12

"refrain from instructing on principles of law which are not only irrelevant to

13

the issues raised by the evidence but also have the effect of confusing the

14

jury or relieving it from making findings on relevant issues". (*People v.*

15

*Saddler (1979) 24 Cal.3d 671, 681, quoting People v. Satchell (1981) 6*

16

*Cal.3d 28, 33, fn. 10.*)  The trial court must instruct on defenses where it

17

appears the defendant is relying on such a defense or there is substantial

18

evidence to support the defense. (*People v. Wooten (1996) 44 Cal.App.4th*

19

*1834, 1848; People v. Larson (2012) 205 Cal.App.4th 810, 823.*)  However,

20

a trial court must only give instructions supported by substantial evidence

21

and has authority to refuse a requested defense theory instruction where

22

there is no supporting evidence. (*People v. Ponce (1996) 44 Cal.App.4th*

23

*1380, 1386; People v. Larson (2012) 205 Cal.App.4th 810, 823-824.*)

24

Substantial evidence does not equate to any evidence; it only pertains to

25

evidence sufficient "to deserve consideration by the jury". (*People v. Wilson*

26

*(2005) 36 Cal.4th 309, 331; People v. Larson (2012) 205 Cal.App.4th 810,*

27

*823-824.*)  Doubts in the sufficiency of the evidence should be resolved in

28

the favor of the defendant where a reasonable jury could conclude specific

- 4 -

1  facts supporting the instruction exist. (People v. Larson (2012) 205
2  Cal.App.4th 810, 824.)

3        Although it appears no proposed written instruction on this defense
4  was tendered to the court, the record is nonetheless clear that appellant
5  requested CALCRIM 3476 be given to the jury. However, as the court
6  properly explained to appellant at the very outset of trial before any
7  evidence was presented, the instruction cannot properly be given unless
8  there is substantial evidence to support the instruction. (RT 15.) Several
9  days later, after the close of evidence at trial, the parties discussed jury
10  instructions. (RT 282.) The court inquired whether it would be appropriate
11  to give CALCRIM 3476 in light of the evidence. The prosecutor argued that
12  the instruction would be appropriate if there was evidence that Ms. Beland
13  "was actually going after the dog" and that the incident "was between Ms.
14  Beland and the defendant." (RT 282.)  The court declined to give the
15  instruction.

16        A reasonable person in appellant's position would not have believed it
17  necessary to strike the victim in order to protect his dog from imminent
18  harm. At the time appellant struck Ms. Beland, she was walking towards
19  him. He was stepping toward her. He had already struck Ms. Beland's dog
20  and the dogs had separated. As appellant testified, when Ms. Beland was
21  approximately six feet away he reacted by striking her with his Chuckit.
22  Thus, appellant's testimony, at best, supported that he had been in possible
23  fear of his dog being harmed by the other dogs, not that he was in fear of
24  being harmed by the victim. Further, that fear existed prior to appellant's
25  encounter with the victim. The dogs had left the area when the victim
26  approached appellant. Appellant's own testimony focused upon the victim
27  and Mr. Bailey coming towards him, not towards his dog. Although Ms.
28  Beland was yelling at appellant as she approached, there was no evidence to

- 5 -

1   suggest that she was approaching appellant's dog in an aggressive or
2   threatening manner.   Nor does any evidence support that Ms. Beland
3   displayed any indications of *harming appellant's dog*.  Simply put, her anger
4   was directed toward appellant, not towards his dog.

5   The court properly declined to give the instruction.  Again, a trial court
6   must only give instructions if supported by substantial and may refuse a
7   requested defense theory instruction where there is no supporting evidence.
8   (*People v. Ponce (1996) 44 Cal.App.4th 1380, 1386; People v. Larson
9   (2012) 205 Cal.App.4th 810, 823-824*.)  The court did instruct on self-
10  defense (CALCRIM 3470), for which there was sufficient supporting
11  evidence.  The court did not err in declining to instruct the jury with
12  CALCRIM 3476.

13  B. Failure to Give Limiting Instruction

14  Appellant contends the court improperly failed to issue a limiting
15  instruction relating to the fact that the Chuckit had been broken after the
16  day of the incident.  There is no dispute in the evidence that appellant broke
17  the Chuckit when he struck the victim, Ms. Beland.  The evidence at trial
18  also established that, after taking the broken Chuckit into evidence, the
19  Auburn Police mistreated the evidence at the police station, breaking it
20  further by striking a chair.  At the outset of trial, appellant moved to
21  "suppress" the Chuckit because it had been broken by the police.  The court
22  treated the request as a motion in limine and indicated it would inform the
23  jury that it could not consider the fact that it was broken into four pieces as
24  evidence of guilt.  The Chuckit was admitted in evidence at trial.  Officer
25  Garlock testified that a supervising officer, in discussing and demonstrating
26  how the Chuckit might be used to assault a person, picked up the Chuckit at
27  the police station and "whacked it on the back of a chair, a padded chair."
28  (RT 118.)  The cup that holds the ball at the end of the Chuckit broke.  (RT

- 6 -

1  118.) The court did not give the limiting instruction at the time of that
2  testimony, or later when it instructed the jury after the close of evidence.
3  Appellant claims the failure to provide a limiting instruction is error which
4  "demands reversal of conviction." (AOB 10.) We disagree.

5      "When evidence is admissible as to one party or for one purpose and is
6  inadmissible as to another party or for another purpose, the court *upon*
7  *request shall* restrict the evidence to its proper scope and instruct the jury
8  accordingly." [Emphasis added.] (*Evidence Code section 355.*) The
9  standard of review applied to the failure of a trial court to give a limiting
10  instruction is whether it is reasonably probable a more favorable outcome to
11  defendant would have resulted absent the error. (*People v. Cavitt (2004) 33*
12  *Cal.4th 187, 209; People v. Watson (1956) 46 Cal.2d 818, 836.*)

13      Here, regardless of whether a limiting instruction should have been
14  given, the failure of the trial court to give a limiting instruction concerning
15  the second breaking of the Chuckit cannot reasonably be said to have had
16  any impact on the jury's verdict. There was absolutely no confusion as to
17  how, when or where the Chuckit had been broken. There was extensive
18  testimony at trial that the additional breaks in the Chuckit occurred after law
19  enforcement took possession of it. Some of the testimony concerning how
20  the Chuckit was broken at the police station was elicited through appellant's
21  own questioning of Officer Garlock. (RT 137-138.) Officer Garlock readily
22  admitted that the additional breaks in the Chuckit were not related to the
23  incident and occurred while a fellow Auburn police
24  officer improperly handled it at the police station.

25      It is not reasonably probable that a more favorable outcome to
26  defendant would have resulted if the court had provided either further
27  explanation or a limiting instruction concerning the breaking of the Chuckit
28  No jury confusion or prejudice to defendant resulted. Therefore, the

- 7 -

1  conviction cannot be reversed on this ground. (*People v. Cavitt (2004) 33*
2  *Cal.4th 187, 209; People v. Watson (1956) 46 Cal.2d 818, 836*.)

3      Appellant's contention is not meritorious for another reason.  The
4  Chuckit was displayed to the jury, and discussed, by Officer Dalton during
5  direct examination.  (RT 78, et seq.)  This was done so without any objection
6  by appellant at that time.  Afer the close of testimony, the court discussed
7  the admission of exhibits, including the Chuckit (Exhibit 25).  (RT 283-284.)
8  When offered by the People, appellant simply stated he objected to the
9  admission of the Chuckit because "it has been altered." (RT 283.)  Putting
10 aside whether this constitutes a valid legal objection, the court admitted the
11 Chuckit as evidence.  In doing so, the court reminded appellant he was "free
12 to comment on this condition being different than it was when it was
13 discovered in the field." (RT 283.)  There is no indication in the record that
14 appellant ever tendered a proposed written limiting instruction to the court
15 concerning the Chuckit.

16     In *People v. Chism (2014) 58 Cal.4th 1266*, appellant claimed the trial
17 court committed prejudicial error by failing to give a limiting instruction after
18 the court had said it would.  The California Supreme Court held that because
19 the trial court was not obligated to provide a limiting instruction, defendant
20 forfeited the issue by failing to request either a correction of the given
21 instruction or a new instruction that applied specifically to the charges
22 against defendant. (*People v. Chism, supra, at 1308*.)  Here, defendant did
23 not request or tender new or different instructions related to the breaking of
24 the Chuckit.  Instead, he failed to voice any objection to the display and
25 discussion of the Chuckit by Officer Dalton during the officer's testimony.
26 His belated objection to the admission of the Chuckit at the close of trial was
27 not a legal objection but an argument that the Chuckit had been altered.
28 Appellant did not request a limiting instruction of any kind at that time

- 8 -

1   either. Under all of these circumstances, appellant has forfeited the issue
2   for appeal.

3       In any event, any claimed error in failing to give a limiting instruction
4   as to defendant was harmless given the fact that the parties elicited
5   testimony that the Chuckit was broken at the time of the incident, and then
6   later when it was mishandled at the police station. There was no dispute as
7   to these facts, nor that the Chuckit was the sole instrumentality used to
8   strike the victim. Last, it is presumed that the jurors followed the
9   instructions that were given, including as to the presumption of innocence,
10  reasonable doubt and self-defense.

11      C. Exclusion of Restraining Order

12      Appellant contends the court erred by not admitting pages from a
13  restraining order application made by the victim, Ms. Beland. Appellant
14  claims this limited his ability to prove Ms. Beland made inconsistent
15  statements bearing on her credibility. Specifically, appellant asserts that, in
16  her application, Ms. Beland stated (1) she had been "limping along with a
17  cane" when appellant struck her; and (2) that she was diagnosed with a
18  concussion. (RT 265.)

19      We apply the abuse of discretion standard of review to the trial court's
20  ruling on the admissibility of evidence. (People v. Alvarez (1996) 14 Cal.4th
21  155, 201; People v. Rowland (1992) 4 Cal.4th 238, 264.) Appellant claims
22  the trial court erred when it refused to receive the restraining order into
23  evidence. While the trial court did not allow the restraining order to be
24  received into evidence, it allowed the equivalent by allowing appellant to
25  testify as to its contents. Specifically, the trial court specifically permitted
26  appellant to testify that "in an application for a restraining order filed against
27  him by Ms. Beland, Ms. Beland stated under oath that she was wearing or
28  using a cane at the time of the assault." (RT 265.) Appellant was allowed

- 9 -

1  to present the essential information, just not in the form he initially
2  requested.  There is thus no merit to his assertion that the trial court abused
3  its discretion on this point.

4      As to the court's refusal to permit evidence from the restraining order
5  to be used for a possible impeachment purpose, it is useful to understand
6  the context in which the issue arose at trial.  The issue of whether Ms.
7  Beland had a concussion, and whether appellant could attempt to impeach
8  her on that issue, was first dealt with by the court before appellant later
9  sought to impeach her on the issue by referring to the papers she filed to
10  obtain a temporary restraining order against appellant.  The court previously
11  reviewed the discharge instructions from the hospital, reflecting the
12  treatment Ms. Beland received after the incident.  According to the court's
13  review of the records, the discharge notes indicated Ms. Beland was
14  manifesting or showing symptoms of a concussion.  (RT 219.)  The court
15  found that introduction of the medical records would have little relevance
16  and, in any event, precluded admission thereof under Evidence Code section
17  352.  (RT 221-223.)

18      Appellant later attempted to cast doubt on Ms. Beland's credibility by
19  requesting that he be allowed to testify as to statements regarding
20  concussion made by Ms. Beland in her application for a restraining order
21  against appellant in Placer County Superior Court case SCV 34311.  At trial,
22  Ms. Beland testified she was examined in the emergency room on the day of
23  the incident as a result of injuries she sustained at the dog park.  She
24  testified a doctor told her she had a "concussion and a closed head injury."
25  (RT 218.)  In her subsequent application for a restraining order, she stated
26  she was seen at the hospital "was diagnosed with a concussion."  (Exhibit
27  11.)  After a lengthy discussion of whether appellant could testify concerning
28  Ms. Beland's statements in her restraining order application concerning

- 10 -

1    concussion, the court declined to permit appellant to testify on that point.
2    The court did so properly. If it was appellant's intent to show inconsistent
3    statements between Ms. Beland's trial testimony and what she stated in her
4    application for a restraining order, there was no inconsistency. Ms. Beland
5    was told she suffered a concussion, which is reflected in her trial testimony,
6    the discharge summary from the hospital and in her restraining order
7    application. Generally, evidence of a statement made by a witness is not
8    inadmissible hearsay if the statement is inconsistent with the witness's
9    testimony at the hearing. (*Evidence Code section 1235.*) However, if a
10   previous hearsay statement is *not* inconsistent with a witness' testimony at
11   the hearing, as is the case with Ms. Beland here, the statement need not be
12   admitted on that basis. The court reiterated the ruling it made previously
13   concerning the medical records – that such evidence would have little
14   relevance and would be barred under Evidence Code section 352. As the
15   court explained, "I see no reason to disturb that [prior] ruling." (RT 265.)
16   The court did not abuse its discretion in precluding this evidence.

17        D. Exclusion of Medical Records

18        Appellant's final contention is that the trial court abused its discretion
19   when it refused to receive into evidence the victim's medical records. Again,
20   rulings on the admissibility of evidence are reviewed for an abuse of
21   discretion. (*People v. Alvarez (1996) 14 Cal.4th 155, 201; People v.*
22   *Rowland (1992) 4 Cal.4th 238, 264.*) The basis for appellant's presentation
23   of the victim's medical records was to impeach her claims of a concussion.
24   As noted above, the records showed Ms. Beland *was* manifesting symptoms
25   of concussion, which is consistent – not inconsistent – with her trial
26   testimony that a doctor told her she suffered a concussion. The trial court
27   correctly determined that the receipt of the medical records was not required
28   and would be misleading, time consuming, and confusing for the jury. There

- 11 -

1  was no abuse of discretion.

2                          IV. <u>Disposition</u>

3           The judgment entered on November 20, 2014 is affirmed.

4

5  Dated: _7-22-15_              _____

6                               Hon. Charles D. Wachob
                                Presiding Judge, Appellate Division

7

8  Dated: _July 22, 2015_       _____

9                               Hon. Michael W. Jones
                                Judge, Appellate Division

10

11 Dated: _7/22/15_             _____

12                              Hon. Garen J. Horst
                                Judge, Appellate Division

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                  - 12 -

SUPERIOR COURT OF CALIFORNIA,
IN AND FOR THE COUNTY OF PLACER

CLERK'S CERTIFICATE OF MAILING (C.C.P. §1013a(4))

Case No.: **62-129468**

Case Name:  **People of the State of California vs. David Weston Cramer**

I, the undersigned, certify that I am the clerk of the Superior Court of California, County of Placer, and I am not a party to this case.

I mailed copies of the documents(s) indicated below:

### Opinion

True copies of the documents were mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as follows:

Placer County District Attorney                Lauren Otto
Via interoffice mail                                    1515 Lincoln Wy
                                                               Auburn, CA  95603

I am readily familiar with the court's business practices for collecting and processing correspondence for mailing; pursuant to those practices, these documents are delivered to

☒ the US Postal Service
☐ UPS
☐ FedEx
☒ Interoffice mail
☐ Other

on July 23, 2015 in Placer County, California.

JAKE CHATTERS
Clerk of the Superior Court

Dated: July 23, 2015                          by: _____
                                                            M. Taylor, Deputy Clerk

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
      Plaintiff,

v.                                No 2-15-cv-00462 KJM-AC

City of Auburn et al,
      Defendants.

_____/


EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

I

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
Superior Court of California
County of Placer

AUG 18 2015

Jake Chatters
Executive Officer & Clerk
By: T. Rawson, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF PLACER

APPELLATE DIVISION

| PEOPLE OF THE STATE OF CALIFORNIA, | Case No.: 62-129468 |
|---|---|
| Plaintiff and Respondent, | Denial of Application for Certification to Third District Court of Appeal |
| vs. | |
| DAVID WESTON CRAMER, | |
| Defendant and Appellant. | |

Appellant's application for certification to the Third District Court of

Appeal is denied as untimely. (*California Rules of Court, Rule 8.1005(b).*)

Dated: 8/18/15

Hon. Charles D. Wachob
Presiding Judge, Appellate Division

- 1 -

# SUPERIOR COURT OF CALIFORNIA
# IN AND FOR THE COUNTY OF PLACER

## CLERK'S CERTIFICATE OF MAILING (C.C.P. § 1013a(4))

Case no.:   62-129468
Case name:   People vs. David Weston Cramer

I, the undersigned, certify that I am the clerk of the Superior Court of California, County of Placer, and I am not a party to this case.

I mailed copies of the document(s) indicated below:

Denial of Application for Certification to Third District Court of Appeal

True copies of the documents were mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as follows:

Placer County District Attorney
10810 Justice Centerd Drive Suite 240
Roseville, CA 95678
(via interoffice c/o Debra Ross)

Lauren Otto                              David Cramer
Law Offices of Mark Berg                 1860 Squires Canyon Court
1515 Lincoln Way                         Cool, CA 95614
Auburn, CA 95603

I am readily familiar with the court's business practices for collecting and processing correspondence for mailing; pursuant to those practices, these documents are delivered to
☒ the US Postal Service
☐ UPS
☐ FedEx
☒ Interoffice mail
☐ Other

Form Adopted for Mandatory Use
Superior Court of California, County of Placer
PL-CW002 [Effective 4-23-2012]                                          www.placer.courts.ca.gov

on August 18, 2015(date), in Placer County, California.

Dated: August 18, 2015

Jake Chatters
Clerk of the Placer County Superior Court

By: Teresa Rawson, Deputy Clerk

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                                 No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/

EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

J

IN THE

# Court of Appeal of the State of California
## IN AND FOR THE
## THIRD APPELLATE DISTRICT

THE PEOPLE,
  Plaintiff and Respondent,
  v.
DAVID CRAMER,
  Defendant and Appellant.

FILED

SEP 17 2015

COURT OF APPEAL - THIRD DISTRICT
DEENA C. FAWCETT, Clerk
BY_____ _____ Deputy

C080125
Placer County
No.   62129468

BY THE COURT:

The petition for transfer filed September 4, 2015, is denied.

Dated:   September 17, 2015

MAURO, Acting P.J.

--------------------------------

cc: See Mailing List

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                                              No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/


EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS



MC-275

Name: David Cramer

Address: 1860 Squires Canyon Court

Cool, Ca. 95614

(530) 320-3641

CDC or ID Number: _____

## Superior Court The State of California

## The County of Placer

(Court)

| | |
|---|---|
| David Cramer | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Petitioner | |
| vs. | No. $WHC - 000\ 1418$ |
| The People of the State of California | *(To be supplied by the Clerk of the Court)* |
| Respondent | |

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal and you are an attorney, file the original and 4 copies of the petition and, if separately bound, 1 set of any supporting documents (unless the court orders otherwise by local rule or in a specific case). If you are filing this petition in the Court of Appeal and you are *not* represented by an attorney, file the original and one set of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2007). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

**RECEIVED**

SEP 28 2015

Superior Court of California
County of Placer

Form Approved for Optional Use
Judicial Council of California
MC-275 (Rev. January 1, 2010)

PETITION FOR WRIT OF HABEAS CORPUS

Page 1 of 6

Penal Code, § 1473 et seq.
Cal. Rules of Court, rule 8.380

This petition concerns:

- [✔] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [ ] Parole
- [ ] Credits
- [ ] Prison discipline
- [ ] Other (specify): _____

1. Your name: **David Cramer**

2. Where are you incarcerated? **Constructive Custody**

3. Why are you in custody?   [✔] Criminal conviction   [ ] Civil commitment

*Answer items a through i to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   **Violation of Cal. Penal Code Section 242**

b. Penal or other code sections: _____

c. Name and location of sentencing or committing court: **Superior Court California Placer County**

d. Case number: **62-129468**

e. Date convicted or committed: **1/14/14 convicted**

f. Date sentenced: **1/20/14**

g. Length of sentence: **4 months, 90 days suspended.**

h. When do you expect to be released? _____

i. Were you represented by counsel in the trial court?   [ ] Yes   [✔] No   *If yes, state the attorney's name and address:*

4. What was the LAST plea you entered? *(Check one):*

   [✔] Not guilty   [ ] Guilty   [ ] Nolo contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [✔] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. (For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

Ineffective assistance of counsel.

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Petitioner was arrested for felony assault with a deadly weapon as a result of an incident at the

Ashley Memorial Dog park. The district attorney later reduced the charge to simple battery.

The petitioner sought the assistance from the public defenders office. The lawyers there

suppressed exculpable evidence. The petitioner filed a Marsden motion and a Ferretta motion

to obtain the evidence. The case before the trial court on 11/22/14 was an issue of simple

assault or self-defense. The petioner was self represented. The impeachment of the alleged

victim was imperative. The petitioner was found guilty by the jury. The petitioner filed an

appeal and Lauren Otto was assigned as court appointed counsel. Counsel's first error was

failing to recognize that the arrest was unlawful. Officer James Dalton of the Auburn Police

Department responded to the call 1/23/14. (RT 67,68 line 28, 1-3) He left the scene without

making an arrest or issuing a citation. 1/25/14, Dalton phoned petitioner and requested that he

meet him at the dog park. (RT 74 line 24) At the termination of the interview Dalton made an

warrantless arrest. (Police report 4) The arrest violated Cal. Penal Code Sect. 836.

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

California Penal Code 836

Jackson v. Superior Court Merced County (App. 3 Dist. 1950) 98 Cal.App.2d 183, 219 P.2d 879

Const. Amend. VI and XIV

Cal Penal Code 1416      Pointer V Texas

Evidence Code 357

The first argument on appeal, the courts failure to give jury instruction
Calcrim 3476. Counsel failed to make clear. The appellate justices falsely
conclude that the two aggressive dog had left the area. (Appellate Opinion
4 line 25)  They were directly behind the two owners. (RT  257 line 19)
Petitioner was twice on the ground over his dog protecting it from the two
larger dogs, (RT 256 line 3, line 26)  Petitioner's dog had three puncture
wounds to the neck. (Photos) The dog park rules placed Beland and Bailey
under a civil responsibility to control their dogs and leave the park. ( Ashley
Dog Park rules) The owners failed to control their dogs.  Beland, Bailey
and their dog's were a threat to petitioner and his dog. The jury instruction
was was warranted.

The second argument on appeal, The court erred when it admitted the
(police altered) chuck it.  Substantially altered evidence is inadmissible.
People v. Wallace 44 Cal.4th 1032.  The chuck it is physical evidence.
Physical evidence must be authenticated.  Altered evidence can not be
authenticated.   The chuck it was inadmissible.

The third argument on appeal, the court erred by not admitting the civil
restraining order.  Beland submitted an affidavit for a civil restraining order
over the incident.  SCV00343311. Beland wrote she was walking with a

cane at the time of the strike. (SCV0034311 page 15) Beland testified in court she was not walking with a cane at the time of the strike. (RT 193 line 13) Beland wrote she received a concussion as a result of the incident. (SCV0034311 page 11) The affidavit was signed under a penalty of perjury. The civil restraining order is a stamped self authenticating court document. The court erred by not admitting it into evidence.

The fourth argument on appeal, the court erred by excluding Beland's medical records from the record. Beland's diagnosis by Dr Goldman of Kaiser Hospital was superficial injury of head. (Medical records page 3) Nowhere on the medical record or discharge instruction does it state Beland suffered a concussion. Petitioner struck her glasses (Rt 257 line 28- 258 line 1)

Beland entered the park with the injury to her scalp. By not allowing petitioner to question Beland on the medical records and the civil restraining order, the court violated petitioner's 6th and 14th amendment rights. Petitioner has a constitution right to confront accusing witness. Pointer v. Texas (1965) 380 U.S. 400, 85 S Ct.1065, 13 L.ED.2d 923. Were it not for these oversights by counsel petitioner would have prevailed on appeal.

7. **Ground 2 or Ground** 2 *(if applicable):*
Suppress of exculpable evidence.

False evidence.

a. Supporting facts:
Petition requested a grand jury investigation of the incident.

Petitioner requested an Auburn Police Department investigation of the incident.

Petioner proved throughout the testimony of Judy Emmert that the police did investigate the

incident.  (RT 248 line 5 - 229 line 5)

Petitioner has first hand knowledge that the strike was not to Beland's scalp.

A competent detective should be able to come to the same conclusion.

The investigation was material and relevant to the petitioner's case.

The district attorney suppressed the Auburn Police Department's detective's report.

Beland stated in court that the strike was to her head.  (RT 194 line 17)

The district attorney knows this is false testimony.

b. Supporting cases, rules, or other authority:
Brady v. Maryland, 373 U.S. 83 (1963)

Const. Amend. XIV

Mooney V. Holohan , 294 U.S. 103, 122.

**PETITION FOR WRIT OF HABEAS CORPUS**

Violation of Miranda rights.

a. Supporting facts:

1/24/14 Beland told police she went to the emergency room.  (Police Report 14-023-02 page 13)

Beland told police petitioner broke the chuck it over her head.  (Police Report 14-023-02 pg 13)

Beland told police petitioner walloped the s*** out of her head  (Police Report 14-023-02 pg 24)

Beland told police petitioner hit her like he had a bat in his hand.  (Police Report 14-023-02 pg 24

Beland maintains she had a concussion as a result of the incident. ( RT 9 line 3 sentencing)

Beland probably told police she had a concussion.

The statements above are probable cause for felony battery.

1/25/14 Dalton requests petitioner to meet him at the dog park. (Police Report 14-023-02 pg 18)

Petitioner meets Dalton at the dog park.

Petitioner asks if he needs a lawyer.

Dalton says no.

Daton and Garlock conduct a custodial interview.

Petitioner was arrested at the termination of the interview. (Police Report 14-023-02  pg 18)

Dalton did not give petitioner a Miranda Warning.

Garlock appeared in court and testified against petitioner. ( RT 114)

Dalton appeared in court and was the substantial witness to the petitioner's guilt. (RT 73 line 22)

b. Supporting cases, rules, or other authority:
Brady v. Maryland, 373 U.S. 83 (1963) ╳    Miranda v Arizona  384 U.S. 436

Const. Amend. V and XIV

People v. Farnam [104]  28 Cal 4th  107   109 or 47

People v Aguilera  51  Cal. App 4th  1151

PETITION FOR WRIT OF HABEAS CORPUS

Altered evidence was presented in court and admitted into evidence.

Fraudulent endorsement of the chain of custody.

a. Supporting facts:
Officer Galock took custody of the chuck it.  (RT line 117 line 7)r

Garlock allowed the evidence to be altered.  (RT 117 line 25 - 118 line 1)

Garlock knows police are not suppose to alter evidence.  (RT 131 line 9)

Garlock voiced no objection to the chuck it being altered.  (RT 118 line 16)

Garlock initialed the evidence bag containing the altered chuck it.  (RT 118 line 24)

The chuck it was brought into court with an intact chain of custody.  (RT 78 line 7 - 79 line 11)

The judge prevent Cramer from questioning the officers on Cal. Penal Code 141 (b)

(RT page 23 line 27- page 24 line 2)

Substantially altered evidence and a intact chain of custody are mutually exclusive.

Petitioner presented a motion to suppress the chuck it.  (RT 23 line 3)

Judge never ruled on  the motion to suppress the chuck it .

The chuck it is unavailable to the scientific community to comment on what force caused it to

to break.

Physical evidence must be authenticated.

Altered evidence cannot be authenticated.

b. Supporting cases, rules, or other authority:
People v. Wallace Cal. 4th 1032      44 Cal. 4th   1032

Chain of Custody

Fraudulent  endorsement

**PETITION FOR WRIT OF HABEAS CORPUS**

8. Did you appeal from the conviction, sentence, or commitment?  ☑ Yes   ☐ No    If yes, give the following information:

a. Name of court
Superior Court State of California Placer County Appellate Division

b. Result: _Afirmed trial court decision_ _____  c. Date of decision: _7/22/15_

d. Case number or citation of opinion, if known: _62-129468_

e. Issues raised: (1) _The court erred: Failure to give jury instructions for self-defense Calcrim 3476_

    (2) _Admitting altered evidence into on to the record._

    (3) _Excluding the civil restraining order and (4) medical records from the record._

f. Were you represented by counsel on appeal? ☑ Yes   ☐ No    If yes, state the attorney's name and address, if known:
_Lauren Otto, 1515 Lincoln Way Auburn. Ca. 95603_

9. Did you seek review in the California Supreme Court? ☑ Yes   ☐ No    If yes, give the following information:

a. Result: _Petition for transfer was denied_ _____  b. Date of decision: _9/17/15_

c. Case number or citation of opinion, if known: _C080125 (Court of Appeal 3d)_

d. Issues raised: (1) _The issues from case in appellate division_

    (2) _False Imprisonment_

    (3) _Prosecution suppress exculpable evidence_

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal: _Ineffective assistance of counsel. Appellate counsel failed to raise all arguable issues._

11. Administrative review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500.) Explain what administrative review you sought or explain why you did not seek such review:

b. Did you seek the highest level of administrative review available? ☐ Yes   ☐ No
Attach documents that show you have exhausted your administrative remedies.

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes   *If yes, continue with number 13.*   ☐ No   *If no, skip to number 15.*

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

         (b) _____

    (4) Result *(attach order or explain why unavailable):* _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

         (b) _____

    (4) Result *(attach order or explain why unavailable):* _____

    (5) Date of decision: _____

  c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

16. Are you presently represented by counsel? ☐ Yes   ☑ No   If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☑ Yes   ☐ No   If yes, explain:
Civil case against the City of Auburn, Officer Dalton, Officer Garlock.
Civil case against lawyer's from the Public Defenders Office.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 9-27-15

(SIGNATURE OF PETITIONER)

## CERTIFICATE OF SERVICE

UNDER PENALTY OF PERJURY, I CERTIFY, that a copy of the foregoing

was provided by U.S. mail to David Bass, District Attorney's Office, 10

Justice Center Drive, Roseville, Ca 95678. Lauren Ortega 5 Lincoln Way,

Auburn Ca 95608

Date_____9-28-15_____


David Grainer

1850 South Canyon Court

Cool, California 95614

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                                                    No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/


EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

**FILED**

Superior Court of California
County of Placer

OCT 26 2015

Jake Chatters
Executive Officer & Clerk
By: J. Rodriguez, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF PLACER

| | |
|---|---|
| In re Petition of Habeas Corpus of, | Cases: WHC-1418 |
| DAVID CRAMER, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| Petitioner. | |

On November 14, 2014, the petitioner was found guilty by a jury of violating Penal Code § 242, simple battery, a misdemeanor in case 62-129468. At the sentencing hearing on November 20, 2014, the petitioner was placed on three years of informal probation and ordered to serve a jail sentence of thirty days. The petitioner filed a notice of appeal and the jail sentence was stayed pending appeal. The appellate division of the superior court affirmed the judgment on July 22, 2015. The petitioner then filed an application for certification to the Third District Court of Appeal, which was denied as untimely on August 18, 2015. The petitioner then filed a motion to transfer the case to the Third District Court of Appeal, which was denied on September 17, 2015. The petitioner filed this petition for writ of habeas corpus on September 28, 2015. The jail sentence continues to be stayed.

The petitioner "bears a heavy burden to first plead sufficient grounds for relief, then prove them" and then must prove the facts that establish by a preponderance of the evidence the basis for relief. (*Younan v. Caruso* (1996) 51 Cal.App.4th 401, 407, 59 Cal.Rptr.2d 103; In re Lucas (2004) 33

- 1 -

1 Cal.4th 682, 694, 16 Cal.Rptr.3d 331, 94 P.3d 477; see also *People v.*
2 *Duvall, supra*, 9 Cal.4th 464, 474, 37 Cal.Rptr.2d 259, 886 P.2d 1252.) The
3 petition should both (i) state with particularity the facts on which relief is
4 sought, and (ii) include copies of reasonably available documentary evidence
5 supporting the claim.  Conclusory allegations made without any explanation
6 of the basis for the allegations do not warrant relief, let alone an evidentiary
7 hearing. (*People v. Duvall* (1995) 9 Cal. 4th 464, at p. 474.[emphasis
8 added]) Vague or conclusory allegations without factual support are
9 insufficient.  (*In re Swain* (1949) 34 Cal.2d 300, 304).

10     The petitioner contends that he received ineffective assistance of
11 counsel.  Although a petition for habeas corpus cannot be used as a
12 substitute for an appeal, it can be used to raise the issue of ineffective
13 assistance of counsel since such a claim is often difficult to show with the
14 appellate record alone.  *In re Harris* (1993) 5 Cal.4th 813, 824-830; *People*
15 *v. Pope* (1979) 23 Cal.3d 412, 426.  To establish ineffective assistance of
16 counsel, the petitioner must prove that the attorney's representation fell
17 below an objective standard of reasonableness under prevailing professional
18 norms and that the petitioner was prejudiced by the inadequate
19 representation.  Prejudice means a reasonable probability that the outcome
20 of the case would have been different if not for the inadequate
21 representation.  *Strickland v. Washington* (1984) 466 U.S. 668; *People v.*
22 *Ledesma* (1987) 43 Cal.3d 171.

23     Initially, the petition is less than clear regarding which attorney is
24 being accused of ineffective representation.  The petitioner was represented
25 by the Public Defender during the trial and the Conflict firm during the
26 appeal.  Paragraph six on page three of the petition describes the grounds
27 for relief as "ineffective assistance of counsel" without specifying the
28 counsel.  Paragraph six, subparagraph (a) on page three of the petition

- 2 -

1   refers to trial counsel, as follows: "The petitioner sought the assistance from
2   the public defender's office. The lawyers there suppressed exculpatory
3   evidence." Later, the same paragraph refers to appellate counsel, as
4   follows: "The petitioner filed an appeal and Lauren Otto was assigned as
5   court appointed counsel. Counsel's first error was failing to recognize that
6   the arrest was unlawful." Paragraph ten on page five of the petition
7   specifically refers to the appellate attorney, as follows: "Ineffective
8   assistance of counsel. Appellate counsel failed to raise all arguable issues."
9   It is unclear whether the petitioner is limiting his claim of ineffective
10  representation to the appellate attorney or whether he is also referring to
11  the trial attorney. And to the extent the petitioner is referring to both
12  attorneys, the petition is not always clear which allegation applies to which
13  attorney. It is the petitioner's burden to state with particularity the facts
14  upon which relief is sought and the court finds that the petition should be
15  denied for these ambiguities.

16      Assuming for the sake of argument that the petitioner is accusing both
17  attorneys of ineffective representation and to the extent the court is able to
18  determine which allegation applies to which attorney, the court finds the
19  allegations are insufficient to make a prima facie showing of inadequate
20  assistance of counsel. Regarding the representation by trial counsel, the
21  court finds that the petitioner's statement that trial counsel "suppressed
22  exculpatory evidence" is a conclusory accusation and is completely
23  unsupported by specific facts.

24      Regarding the representation by appellate counsel, the petition alleges
25  that the attorney "erred by failing to recognize that the arrest was unlawful"
26  and that "the arrest violated Penal Code Sect. 836." However, the petition
27  does not refer to specific facts to support this conclusory statement.
28

- 3 -

1    The petitioner also alleges that "appellate counsel failed to raise all
2    arguable issues." The appellate attorney raised four issues on appeal: that
3    the trial court erred by declining to give the defense of property instruction
4    to the jury, that the trial court should have given a limiting instruction to the
5    jury regarding the fact that an item of evidence was altered by the police
6    department, that the trial court should have admitted into evidence pages
7    from a restraining order, and that the trial court should have admitted into
8    evidence the victim's medical records. The petitioner appears to agree with
9    the appellate issues raised by his attorney, but claims that the attorney
10   should have made additional supporting arguments. However, the petitioner
11   fails to describe with particularity how the absence of these additional
12   arguments establishes that the attorney's representation fell below an
13   objective standard of reasonableness under prevailing professional norms or
14   that a reasonable probability exists that these additional arguments would
15   have changed the outcome of the case.

16       For the reasons set forth above, the petition is denied.

17

18   Date: 10/26/15

19                                        Hon. Jeffrey S. Penney
                                          Placer County Superior Court Judge
20

21

22

23

24

25

26

27

28

- 4 -

# SUPERIOR COURT OF CALIFORNIA
## IN AND FOR THE COUNTY OF PLACER

### CLERK'S CERTIFICATE OF MAILING (C.C.P. §1013a(4))

**Case number: WHC-1418/62-129468**
**Case name: In Re: David Cramer**

I, the undersigned, certify that I am the clerk of the Superior Court of California, County of Placer, and I am not a party to this case.

I mailed copies of the document(s) indicated below:

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

True copies of the documents were mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as follows:

**Placer County District Attorney**
**10810 Justice Center Dr., Ste. 240**
**Roseville, CA 95661**

**Law Offices of Mark A. Berg**
**1515 Lincoln Way**
**Auburn, CA 95603**

**David Cramer**
**1860 Squires Canyon Court**
**Cool, CA 95614**

I am readily familiar with the court's business practices for collecting and processing correspondence for mailing; pursuant to those practices, the documents are delivered to
☒ the US Postal Service
☐ UPS
☐ FedEx
☐ Interoffice mail
☐ Other (via email)

On October 28, 2015, Placer County, California

Dated: October 28, 2015

Jake Chatters
Clerk of the Placer County Superior Court
By:
J. Rodriguez, Deputy Clerk

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
     Plaintiff,

v.                                  No 2-15-cv-00462 KJM-AC

City of Auburn et al,
     Defendants.

_____/


EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

               M

MC-275

Name: David Cramer

Address: 1860 Squires Canyon Court

Cool, Ca. 95614

95300 320-3641

CDC or ID Number: _____

FILED

NOV - 9 2015

Court of Appeal, Third Appellate District
Deena C. Fawcett, Clerk
By_____Deputy

Court of Appeal

Third Appellate District

(Court)

| | |
|---|---|
| David Cramer | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Petitioner | |
| vs. | No. _C080618_ |
| People of the State of California | *(To be supplied by the Clerk of the Court)* |
| Respondent | |

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal and you are an attorney, file the original and 4 copies of the petition and, if separately bound, 1 set of any supporting documents (unless the court orders otherwise by local rule or in a specific case). If you are filing this petition in the Court of Appeal and you are *not* represented by an attorney, file the original and one set of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2007). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved for Optional Use
Judicial Council of California
MC-275 [Rev. January 1, 2010]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 at seq.,
Cal. Rules of Court, rule 8.380
www.courtinfo.ca.gov

MC-275

This petition concerns:

- [✔] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [ ] Other (specify): _____
- [ ] Parole
- [ ] Credits
- [ ] Prison discipline

1. Your name: David Cramer

2. Where are you incarcerated? Constructive Custody Placer County

3. Why are you in custody?  [ ] Criminal conviction   [ ] Civil commitment

*Answer items a through i to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Violation of Cal. Penal Code Sect. 242

b. Penal or other code sections: _____

c. Name and location of sentencing or committing court: Superior Court California Placer County

Auburn Historic Courthouse

d. Case number: 62-129468

e. Date convicted or committed: 1/14/14

f. Date sentenced: 1/20/14

g. Length of sentence: 4 months 90 days suspended.

h. When do you expect to be released? _____

i. Were you represented by counsel in the trial court?  [ ] Yes   [✔] No   *If yes, state the attorney's name and address:*

_____

4. What was the LAST plea you entered? *(Check one):*

[✔] Not guilty   [ ] Guilty   [ ] Nolo contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[✔] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

8. GROUNDS FOR RELIEF
**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

Ineffective assistance of counsel

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

1/23/14, Thursday prior to 10:00 am Julie Beland injured her head. (Within the scalp)

Beland has access to prescription medication. Beland testified things just weren't making sense.

Beland lied to police this scalp injury was a result of the dog park incident.

Beland's prescription medications were suppressed. (Exhibit 19 page 2) D    page 1

10:00 am Ashley Dog Park. Petitioner David Cramer enters the dog park. Michael Bailey's large

german shepherd and Beland's female belgian shepherd immediately engaged Cramer's young

english shepherd. The larger dogs bite Cramer's dog on the head, neck, back, and flank.

Bailey's dog took Cramer's dog by the neck 4-5 times. (RT 254- 259)

Cramer is twice on the ground over his dog protecting it from the larger dogs.

Beland failed to recall her dog. Beland's dog took Cramer by the neck. Cramer's dog had

3 puncture wounds on its neck. (Photos) Cramer slapped Beland's dog on the butt to get it

to release his dog. Beland and Bailey both advance toward Cramer. Beland advanced rapidly

with an arm in the air screaming obscenities. Bailey's testimony proves Cramer did not

b. Supporting cases, rules, or other authority (optional):
(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

Jackson v. Superior Court in an for the County of Merced, 98 Cal. App 2d 183 (TOA)

Section 11.03 Fourth Amendment Limitations, People v. Pat Chambers, People v. Pamela Lee,

Pointer v. Texas, People v. Williams, People v. Riser, Criminal law section 122 Interrogation,

Penal Code Section 692.

advance toward Beland. Cramer was "rooted on the spot". (RT 159 line 19)

Robert Corbett stated Beland ran toward Cramer.

If Beland and Bailey understood and followed the rules of the dog park the confrontation would not have happened.

Cramer saw two loose aggressive dogs, a very aggressive woman and a man advancing toward him.   When Beland arrived, Cramer reacted and slapped at Beland's sunglasses. Scanel's testimony proves Bailey lied about where he was at the start of the incident. (RT178 line 19)

Beland lied to police: (Police report page 13 line 7 and 24 line 19)

1 That it was normal play between the dogs.

2 That Cramer advance toward her.

3 That Cramer used two hands and hit her over the head.

4 That Cramer caused the injury to her scalp and

5 That she sustained a concussion.

Jaime Scanel's testimony proves that Beland, Bailey and Corbett lied to police that Cramer tried to leave the park right after the strike to Beland and that the 911 call was placed immediately after the incident. ( RT 183 line 18)

The case before the trial court was whether the strike was self defense or

assault.  The impeachment of Julie Beland was imperative.

Cramer was self represent at trial and lost. He appealed and Lauren Otto

was court appointed counsel.  The mistakes Otto made were basic

principles of law.   Cramer would have won the appeal but for

the errors of counsel.  Otto's first error was failure to recognize

that the arrest was unlawful. Officer James Dalton arrest Cramer two days

after the incident with out an arrest warrant.

Dalton and the Auburn Police Department exclude any evidence form the

police report that fractured Dalton's probable cause.

1  Dalton lied on his report that he questioned the accusing witnesses

separately.  (198 line 7 - line 14)

2  Dalton failed to mention Beland and her husband returned to the park

within an hour after the incident to issue threats to get even.

3  Dalton failed to include Cramer's statement that Beland returned to the

park after the incident on his report.

4  Auburn PD fail to enter reports by Judy Emmert and Linda Cassel on the

police report that Beland had returned to the park.  (RT 248 LINE 10)

**The first argument on appeal**: The trial court failed to give jury instruction

Calcrim 3476 The Right to Defend Real or Personal Property. Petitioner was twice on his knee over his dog protecting it from the larger dogs. (RT 256 line 3, line 26) Petitioner's dog had 3 puncture wounds to the neck. (Photos) The aggressive dogs were directly behind their owners. (RT 257 line 19) Beland, Bailey and their dogs were a threat to both the petitioner and his dog. The Petitioner requested the instruction. (RT 282) Bench notes instructional duty: The court must instruct on a defense when the defendant requests it and there is substantial evidence supporting the defense.

**The second argument on appeal**: The court erred when it admitted the police altered chuck it. The police altered the evidence and broke it twice after the incident. (Police Report 25) The evidence analyzed was not the evidence originally received. People v. Wallace, 44 Cal. 4th 1032. The trial judge prevented Cramer from questioning the police on Cal. Penal Code 141 b. ( 23 line 27- 24 line 4)

**The third argument on appeal**: The court erred by not admitting the civil restraining order on to the record. Beland submitted an application for a civil restraining order because of the incident. (SCV00343311) Beland wrote that she was walking with a cane at the time of the incident

(SCV00343311 page 15)  Beland testified she was not walking with a cane at the time of the strike.  (RT 193 line 13)  Beland wrote she received a concussion as a result of the incident.  (SCV 00343311 page 11)  The affidavit was signed under penalty of perjury.  The civil restraining order is a stamped self authenticating court document.  The trial judge omitted it

**The fourth argument on appeal:**  The court erred when excluded Beland's medical records from the record. Dr Goldman's diagnosis of Julie Beland was superficial injury of the head.  (Medical record page 3) No where on the medical record or discharge instruction does it state Beland suffered a concussion.  Petitioner struck Beland's glasses.  (RT 257 line 28, 258 line 1)  Beland entered the park with an injury to the head. The trial judge use evidence code section 352 to exclude both the civil restraining order and the medical records.  Evidence can be exclude only if its probative value is "substantially outweighed" by the factors relied on by the party seeking exclusion.

1 Cramer has the constitutional right to confront accusing witnesses.

Pointer v. Texas 380 U.S. 400, 85 S Ct.1065, 13 L.ED. 2d 923

2 Impeachment of Beland was a main issue not collateral.

3 The civil restraining order is self authenticating.

Were it not for these oversights Cramer would have prevailed on appeal.

Suppression of evidence

Prosecution knowingly allowing false testimony

a. Supporting facts:

Petitioner requested a Grand Jury investigation of the incident.

Petitioner requested an Auburn Police Department investigation of the incident.

Petitioner receive assurance from the Auburn Police that a thorough investigation would be

conducted.

Judy Emmert testified the police did investigate the incident. (RT 248 line 5- 299 line 5)

Petitioner has first hand knowledge that the strike was not to Beland's scalp.

A competent detective should have been able to determine that Beland's two injuries were the

result of separate incidents.

Beland's prescpition drugs for 1/23/14 were redacted.

Petitioner did not receive Beland's statements to investigators.

The investigation was material and relevant to the petitioner's case.

The district attorney suppressed the Auburn Police Department's investigation of the incident.

Beland stated in court under oath the strike was to her head. (Scalp)  (RT 194 line 17)

The district attorney knows this is false testimony.

b. Supporting cases, rules, or other authority:

Brady v. Maryland, 373 U.S. 83 (1963)

Mooney v. Holohan, 294 U.S. 103, 122.

Const Amend. XIV

7. Ground 2 or Ground **3** _(if applicable):_
Violation of Miranda rights

Denial of legal counsel

a. Supporting facts:
Police never issued a Miranda waring to the petitioner.

1/24/14 Beland told police she went to the emergency room.  (Police Report 14-023-02 page 13)

Beland told police petioner broke the chuck it over her head. (Police Report 14-023-02 page 13)

Beland told police petitioner walloped the s*** out of her head  (Police Report 14-023-02 page 24)

Beland told police petitioner hit her like he had a bat in his hand.(Police Report 14-023-02 page 2

Beland maintains she had a concussion as a result of the incident.  (RT line 3 sentencing)

Beland probably told police she had a concussion.

The above statements are probable cause for felony battery.

1/25/14 Dalton requests petitioner to meet him at the dog park.  (Police Report 14-023-02 page 1

Petioner meets Dalton at the dog park.

Petitioner asks if he needs a lawyer.

Dalton says no.

Dalton and Garlock conduct a custodial interview.

Petitioner is arrested at the termination of the interview.  (Police Report 14-023-02 page 18)

Garlock appeared in court and testified against the petitioner.  (RT 114)

Dalton appeared in court and was the substantial witness to the petitioners guilt. ( RT 73 line 22)

b. Supporting cases, rules, or other authority:
Miranda v. Arizona 384 U.S. 436

People v. Stitely (2005) 35 Cal.4th 514 [26 cal.ptr.3d 1, 108 P.3d 182]

Criminal law sect 122 Interogation

7. **Ground 2 or Ground** _4_ _(if applicable):_

Altered evidence was presented in court and admitted into evidence.

The evidence bag was fraudulently endorsed by police.

a. Supporting facts:
   Officer Garlock took custody of the chuck it.  (RT 117 line 7)

   Garlock allowed the evidence to be altered.  (RT 117 line 25- 118 line 1)

   Garlock knows police are not suppose to alter evidence.  (RT 131 line 9)

   Garlock voiced no objection to the evidence being altered twice.  (RT 118 line 16)

   Garlock fraudulently initialed the evidence bag containing the altered evidence.  (RT 118 line 24)

   The chuck it was presented in court with an intact chain of custody.  (RT 78 line 7- 79 line 11)

   The judge prevented Cramer from questioning the officers on Cal. Penal Code 141 (b).

   (RT 23 line 27- 24 line 2)

   Substantially altered evidence and an intact chain of custody are mutually exclusive terms.

   Petitioner presented a motion to suppress the chuck it.  (Rt 23 line 3)

   Trial judge never ruled on the motion to suppress the chuck it.

   The altered chuck it is unavailable to the scientific community to comment on the force which

   caused it to break.  Level of force was material and relevant to the defense.

   Physical evidence must be authenticated.

   Altered evidence cannot be authenticated.

   The court erred in admitting the twice altered chuck it into evidence.

b. Supporting cases, rules, or other authority:
   People v. Wallace 44 Cal. 4th 1032

   People v. Riser (1956) 47 Cal.2d 566 [305P. 2d 1]

**PETITION FOR WRIT OF HABEAS CORPUS**

MC-275

8 Did you appeal from the conviction, sentence, or commitment? ☑ Yes ☐ No  *If yes, give the following information:*

a. Name of court (Court of Appeal or Appellate Division of Superior Court)
Superior Court State of California Placer County Appellate Division

b. Result: Afirmed trial court decision    c. Date of decision: 7/22/15

d. Case number or citation of opinion, if known: 62-129468

e. Issues raised: (1) The court erred: Failure to give jury instructions for self-defense Calcrim 3476

(2) Admitting altered evidence into on to the record.

(3) Excluding the civil restraining order and (4) medical records from the record.

f. Were you represented by counsel on appeal? ☑ Yes ☐ No  *If yes, state the attorney's name and address, if known:*
Lauren Otto, 1515 Lincoln Way Auburn. Ca. 95603

9. Did you seek review in the California Supreme Court? ☑ Yes ☐ No  *If yes, give the following information:*

a. Result: Petition for transfer was denied    b. Date of decision: 9/17/15

c. Case number or citation of opinion, if known: C080125 (Court of Appeal 3d)

d. Issues raised: (1) The issues from case in appellate division

(2) False Imprisonment

(3) Prosecution suppress exculpable evidence

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
Ineffective assistance of counsel. Appellate counsel failed to raise all arguable issues.

11. Administrative review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500.) Explain what administrative review you sought or explain why you did not seek such review:

b. Did you seek the highest level of administrative review available? ☐ Yes ☐ No
*Attach documents that show you have exhausted your administrative remedies.*

Case 2:15-cv-02506-GKD Document 1 Filed 12/02/15 N Page 172 of 190

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes ☑ No If yes, continue with number 13. If no, skip to number 15.

13. a. (1) Name of court: Superior Court The State of California The County of Placer

(2) Nature of proceeding (for example, "habeas corpus petition"): Habeas corpus petition MC-275

(3) Issues raised: (a) In effective assistance of counsel, false arrest, admission of altered evidence,

(b) prosecution suppression of evidence, violation of miranda rights

(4) Result (attach order or explain why unavailable): Denied

(5) Date of decision: 10/26/15

b. (1) Name of court: Court of Appeal Third Appellate District

(2) Nature of proceeding: Habeas corpus petition MC-275

(3) Issues raised: (a) In effective assistance of counsel, false arrest, admission of altered evidence,

(b) prosecution suppression of evidence, violation of miranda rights

(4) Result (attach order or explain why unavailable): Pending

(5) Date of decision:

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

16. Are you presently represented by counsel? ☐ Yes ☑ No If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☑ Yes ☐ No If yes, explain:
Sentencing in Superior Court. *Criminal*

*Federal district Court Civil False Arrest*

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 11-9-15                                    ► _____
                                                        (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 2010]              **PETITION FOR WRIT OF HABEAS CORPUS**                    Page 6 of 6

## CERTIFICATE OF SERVICE

UNDER PENALTY OF PERJURY, I CERTIFY that a copy of the foregoing

was provided by U.S. mail to David Bass, District Attorneys Office, 10810

Justice Center Drive #240, Roseville, Ca 95678 and Lauren Otto 1515

Lincoln Way Auburn Ca. 95603.

Date _11-9-15_

David Cramer

1860 Squires Canyon Court

Cool, California 95614

APP-009

**PROOF OF SERVICE (Court of Appeal)**

☑ Mail    ☑ Personal Service

FOR COURT USE ONLY

Notice: This form may be used to provide proof that a document has been served in a proceeding in the Court of Appeal. Please read *Information Sheet for Proof of Service (Court of Appeal)* (form APP-009-INFO) before completing this form.

Case Name: *Petition for writ of habeas corpus*

Court of Appeal Case Number:

Superior Court Case Number:

1. At the time of service I was at least 18 years of age and not a party to this legal action.

2. My ☑ residence ☐ business   address is (specify):
   *1860 Squires Canyon Ct*
   *Col Ca 75614*

3. I mailed or personally delivered a copy of the following document as indicated below (fill in the name of the document you mailed or delivered and complete either a or b):
   *Petition & Documents*

   a. ☑ **Mail.** I mailed a copy of the document identified above as follows:

      (1) I enclosed a copy of the document identified above in an envelope or envelopes **and**

         (a) ☑ **deposited** the sealed envelope(s) with the U.S. Postal Service, with the postage fully prepaid.

         (b) ☐ **placed** the envelope(s) for collection and mailing on the date and at the place shown in items below, following our ordinary business practices. I am readily familiar with this business's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service, in a sealed envelope(s) with postage fully prepaid.

      (2) Date mailed: *11-9-15*

      (3) The envelope was or envelopes were addressed as follows:

         (a) Person served: *David Bos*
            (i) Name:
            (ii) Address: *10010 Justice Center dr*
                 *Roseville Ca    95678*

         (b) Person served:
            (i) Name: *Lauren otto*
            (ii) Address: *1515 Lincoln Wa*
                 *Auborn Ca*
                 *95603*

         (c) Person served:
            (i) Name:
            (ii) Address:

      ☐ Additional persons served are listed on the attached page (write "APP-009, Item 3a" at the top of the page).

      (4) I am a resident of or employed in the county where the mailing occurred. The document was mailed from (city and state):

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
APP-009 [New January 1, 2009]

**PROOF OF SERVICE
(Court of Appeal)**

www.courtinfo.ca.gov

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                                      No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/


EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS


*N*

Court of Appeal, Third Appellate District

Deputy Clerk/Administrator

Electronically FILED on 11/20/2015 by D. Welton, Deputy Clerk

**IN THE**

# Court of Appeal of the State of California
## IN AND FOR THE
## THIRD APPELLATE DISTRICT

In re DAVID CRAMER on Habeas Corpus.

Case No.   C080618

BY THE COURT:

The petition for writ of habeas corpus is denied.

Dated:   November 20, 2015

BLEASE, Acting P.J.

---------------------------------

cc: See Mailing List

David Cramer
1860 Squires Canyon Court
Cool, Ca 95614
(530)320-3641

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

David Cramer
    Plaintiff,

v.                             No 2-15-cv-00462 KJM-AC

City of Auburn et al,
    Defendants.

_____/


EXHIBITS IN SPPORT OF PETITION FOR WRIT OF HABEAS CORPUS



David Cramer Pro Se
1860 Squires Canyon Court
Cool, Ca. 95614
(530) 320-3641


IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In re                                    )              Case #: C080618
                                         )
David Cramer,                            )
                                         )
on Habeas Corpus.                        )
                                         )
                                         )
_____


~~PETITION FOR WRIT OF HABEAS CORPUS~~

PETITION FOR REVIEW TO EXHAUST STATE REMEDIES


RECEIVED

DEC 0 1 2015

CLERK SUPREME COURT

This case presents no grounds for review under rule 8.500(b) and the petition is filed solely to exhaust state remedies for a federal habeas corpus purposes.

On November 14, 2014 the petitioner was found guilty by a jury of violating Penal Code sect 242, simple battery, a misdemeanor in case 62-129468. At the sentencing hearing on November 20, 2014, the petitioner was placed on three years of informal probation and ordered to serve a jail sentence thirty days. The petitioner filed a notice of appeal and the jail sentence was stayed pending appeal. The appellate division of the superior court affirmed the judgement on July 22 2015. The petitioner then filed an application for certification to the Third District Court of Appeal, which was denied as untimely on august 18, 2015. The petitioner then filed a motion to transfer the case to the Third District Court of Appeal, Which was denied on September 17, 2015. The petitioner then filed a petition for writ of habeas corpus in the Superior Court of California Placer County case # WHC-1418. The petition was denied October 26,2015. The petitioner then filed a writ of habeas corpus with the Third District Court of Appeal case # C080618. The petition was denied Novernber 20, 2015.

1/23/14, Thursday prior to 10:00 am Julie Beland injured her head. (within

the scalp) Beland has access to prescription medication. Beland testified

things just weren't making sense. (RT 198 line 19) Beland lied to police

this scalp injury was a result of the dog park incident. Beland's prescription

medication were suppressed. (Exhibit 19 page 2)

10:00 am Ashley Dog Park. Petitioner David Cramer enters the dog park.

Michael Bailey's large german shepherd and Beland's female belgian

shepherd immediately engage Cramer's young english shepherd. The

larger dog' bite Cramer's dog on the head, neck. back, and flank. Bailey's

dog took Cramers dog by the neck 4-5 times. (RT254-259) Cramer is

twice on the ground over his dog protecting it from the larger dogs. Beland

failed to recall her dog. Beland's dog took Cramer's dog by the neck.

Cramer's dog had three puncture wounds to the neck. (photos) Cramer

slapped Belan's dog on the butt to get it to release his dog. Beland and

Bailey both advanced toward Cramer. Beland advanced rapidly with an

arm in the air screaming obscenities. Bailey's testimony proves Cramer did

not advance toward Beland. Cramer was "rooted on the spot". (RT 159

line 19) Robert Corbett stated Beland ran toward Cramer.

If Beland and Bailey understood and followed the rules of the dog park the

confrontation would not have happened.

Cramer saw two loose aggressive dogs, a very aggressive woman and a man advancing toward him. The People v. Pat Chambers 22 Cal. App 2d 687. When Beland arrived, Cramer reacted and slapped at Beland's sunglasses. The People v. Pamela Lee 131 Cal. App 4th 1413. Scanel's testimony proves Bailey lied about where he was at the start of the incident. (RT178 line 19)

Beland lied to police: (Police report page 13 line 7 and 24 line 19)

1 That it was normal play between the dogs.

2 That Cramer advance toward her.

3 That Cramer used two hands and hit her over the head.

4 That Cramer caused the injury to her scalp and

5 That she sustained a concussion.

Jaime Scanel's testimony proves that Beland, Bailey and Corbett lied to police that Cramer tried to leave the park right after the strike to Beland and that the 911 call was placed immediately after the incident. ( RT 183 line 18)

The case before the trial court was whether the strike was self defense or assault. The impeachment of Julie Beland was imperative.

Cramer was self represent at trial and lost. He appealed and Lauren Otto

was court appointed counsel. The mistakes Otto made were basic

principles of law.   Cramer would have won the appeal but for

the errors of counsel.  Otto's first error was failure to recognize

that the arrest was unlawful. Officer James Dalton arrest Cramer two days

after the incident with out an arrest warrant.  Jackson v. Superior Court

Merced County 98 Cal. App. 2d 183.

Dalton and the Auburn Police Department exclude any evidence form the

police report that fractured Dalton's probable cause.

1  Dalton lied on his report that he questioned the accusing witnesses

separately.  (198 line 7 - line 14)

2  Dalton failed to mention Beland and her husband returned to the park

within an hour after the incident to issue threats to get even.

3  Dalton failed to include Cramer's statement that Beland returned to the

park after the incident on his report.

4  Auburn PD fail to enter reports by Judy Emmert and Linda Cassel on the

police report that Beland had returned to the park.  (RT 248 LINE 10)


**The first argument on appeal**: The trial court failed to give jury instruction

Calcrim 3476 The Right to Defend Real or Personal Property.  Petitioner

was twice on his knee over his dog protecting it from the larger dogs. (RT 256 line 3, line 26)  Petitioner's dog had 3 puncture wounds to the neck. (Photos)  The aggressive dogs were directly behind their owners.  (RT 257 line 19)  Beland, Bailey and their dogs were a threat to both the petitioner and his dog.   The Petitioner requested the instruction. (RT 282)  Bench notes instructional duty:  The court must instruct on a defense when the defendant requests it and there is substantial evidence supporting the defense.

**The second argument on appeal**:  The court erred when it admitted the police altered chuck it.  The police altered the evidence and broke it twice after the incident.  (Police Report 25)  The evidence analyzed was not the evidence originally received.  People v. Wallace, 44 Cal. 4th 1032.  The trial judge prevented Cramer from questioning the police on Cal. Penal Code 141 b.  ( 23 line 27- 24 line 4)

**The third argument on appeal**:  The court erred by not admitting the civil restraining order on to the record.  Beland submitted an application for a civil restraining order because of the incident.  (SCV00343311)  Beland wrote that she was walking with a cane at the time of the incident (SCV00343311 page 15)  Beland testified she was not walking with a cane

at the time of the strike. (RT 193 line 13) Beland wrote she received a
concussion as a result of the incident. (SCV 00343311 page 11) The
affidavit was signed under penalty of perjury. The civil restraining order is a
stamped self authenticating court document. The trial judge omitted it

**The fourth argument on appeal:** The court erred when excluded
Beland's medical records from the record. Dr Goldman's diagnosis of Julie
Beland was superficial injury of the head. (Medical record page 3)
No where on the medical record or discharge instruction does it state
Beland suffered a concussion. Petitioner struck Beland's glasses. (RT 257
line 28, 258 line 1) Beland entered the park with an injury to the head.
The trial judge use evidence code section 352 to exclude both the civil
restraining order and the medical records. Evidence can be exclude only if
its probative value is "substantially outweighed" by the factors relied on by
the party seeking exclusion.

1 Cramer has the constitutional right to confront accusing witnesses.

   Pointer v. Texas 380 U.S. 400, 85 S Ct.1065, 13 L.ED. 2d 923

2 Impeachment of Beland was a main issue not collateral.

3 The civil restraining order is self authenticating.

Were it not for these oversights Cramer would have prevailed on appeal.

Alleged victim, Julie Beland, sustained an injury to her head prior to going to the dog park 1/23/14. Beland lied to police it was a result of the incident. Petitioner struck Beland's glasses. Petitioner requested a Grand Jury investigation of the incident. Petitioner requested an Auburn Police Department investigation of the incident. Petitioner received assurance from the Auburn Police Department that a thorough investigation would be conducted. Judy Emmert testified she did speak with the police a second time about the incident. (RT 248 line 14- 299 line 5) Petitioner has first hand knowledge tat the strike was not to Beland's scalp. A competent detective should have been able to determine that Beland's two injuries were the result of separate incidents. Beland's prescription drugs for 1/23/14 were redacted. Petitioner did not receive Beland's statement to investigators. The investigation was material and relevant to the petitioners case. The district attorney suppressed the Auburn Police Department's investigation of the incident. Mooney v. Holohan 295 U.S. 103, 122 Beland stated in court under oath the strike was to her head. (Scalp) (RT194 line 17) The district attorney knows this to be false testimony.

_____/

David Cramer, Petitioner

*11-30-15*

Date

See attached
Jurat
dated *11·30·15*

# CALIFORNIA JURAT CERTIFICATE

A notary or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of **CALIFORNIA**

County of **PLACER**

Subscribed and sworn to (or affirmed) before me on this

___30___ day of _November_ , 20_15_ , by
   Day             Month              Year

(1)___David Cramer___
            Name of Signer

proved to me on the basis of satisfactory evidence to be the person who appeared before me (.) (,) (and

(2)_____
            Name of Signer

proved to me on the basis of satisfactory evidence to be the person who appeared before me.)

TERI D. TATE
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2102039
PLACER COUNTY
My Comm. Exp. April 1, 2019

Place Notary Seal Above

___Teri D. Tate___
        Signature of Notary Public

──────── *OPTIONAL* ────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document*

**Description of Attached Document**

Title or Type of Document: _Petition for Writ of Habeas Corpus pet. for Review) to exhaust State Remedies_

Document Date: _____   Number of Pages: _9 pages_

Signer(s) Other Than Named Above: _____

Court of Appeal, Third Appellate District

Deena C. Fawcett, Clerk/Administrator

Electronically FILED on 11/20/2015 by D. Welton, Deputy Clerk

IN THE

# Court of Appeal of the State of California

## IN AND FOR THE

## THIRD APPELLATE DISTRICT

In re DAVID CRAMER on Habeas Corpus.

Case No.  C080618

BY THE COURT:

The petition for writ of habeas corpus is denied.

Dated:   November 20, 2015

BLEASE, Acting P.J.

---------------------------------

cc: See Mailing List

**APP-009**

| PROOF OF SERVICE (Court of Appeal) | FOR COURT USE ONLY |
|---|---|
| ☑ Mail  ☐ Personal Service | |

**Notice: This form may be used to provide proof that a document has been served in a proceeding in the Court of Appeal. Please read** *Information Sheet for Proof of Service (Court of Appeal)* **(form APP-009-INFO) before completing this form.**

Case Name: *David Cramer on Habeas Corpus*

Court of Appeal Case Number: *C080618*

Superior Court Case Number:

1. At the time of service I was at least 18 years of age and **not a party to this legal action.**

2. My ☒ residence, ☐ business  address is *(specify):*
   *1800 Osario Canyon at Cool Ca 95614*

3. I mailed or personally delivered a copy of the following document as indicated below *(fill in the name of the document you mailed or delivered and complete either a or b):*

   a. ☒ **Mail.** I mailed a copy of the document identified above as follows:

      (1) I enclosed a copy of the document identified above in an envelope or envelopes **and**

         (a) ☒ deposited the sealed envelope(s) with the U.S. Postal Service, with the postage fully prepaid.

         (b) ☐ placed the envelope(s) for collection and mailing on the date and at the place shown in items below, following our ordinary business practices. I am readily familiar with this business's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service, in a sealed envelope(s) with postage fully prepaid.

      (2) Date mailed: *12-1-15*

      (3) The envelope was or envelopes were addressed as follows:

         (a) Person served:
            (i) Name: *Court of Appeal*
            (ii) Address: *914 Capitol Mall Sac Ca 95814*

         (b) Person served: *Office of Attorney General*
            (i) Name: *1300 I st  1142*
            (ii) Address: *Sac Ca 95814*

         (c) Person served: *District Attorney*
            (i) Name: *David Buss*
            (ii) Address: *10810 Justice Center dr Roseville Ca 95678*

         ☒ Additional persons served are listed on the attached page *(write "APP-009, Item 3a" at the top of the page).*

      (4) I am a resident of or employed in the county where the mailing occurred. The document was mailed from *(city and state):*

| Form Approved for Optional Use Judicial Council of California APP-009 [New January 1, 2009] | PROOF OF SERVICE (Court of Appeal) | www.courtinfo.ca.gov |
|---|---|---|

APP-009

3a

Lauren Otto
1515 Lincoln
Auburn Ca 95603